## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>       Plaintiff,<br><br>v.<br><br>UPS GROUND FREIGHT, INC.,<br>d/b/a UPS FREIGHT,<br><br>       Defendant,<br><br>and<br><br>INTERNATIONAL BROTHERHOOD OF<br>TEAMSTERS,<br><br>       Rule 19(a) Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 17-2453<br><br>    JURY DEMAND |

## COMPLAINT

## NATURE OF THE ACTION

1.      This action is brought under Title I of the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 327, as amended, 42 U.S.C. § 12101 *et seq*. and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment actions on the basis of disability and to provide appropriate relief to Thomas Diebold. As alleged with greater particularity below, the Commission alleges that UPS Ground Freight, Inc. violated the ADA by discriminating against Thomas Diebold, who became medically disqualified from working as a road driver. The Commission also alleges that UPS Ground Freight, Inc. is a party to a current collective bargaining agreement with the International Brotherhood of Teamsters that has the effect of subjecting employees with disabilities to discrimination prohibited by the ADA.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

3.      This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) of Title VII of the Civil Rights Act of 1964 (Title VII), 78 Stat. 253, 42 U.S.C.§ 2000e-5(f)(1), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4.      Venue is proper in this Court pursuant to 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(f)(3)) because the employment practices alleged to be unlawful were and are now being committed at the UPS Ground Freight, Inc. facility in Kansas City, Kansas.

## PARTIES

5.      Plaintiff Equal Employment Opportunity Commission is the agency of the United States charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(f)(1)).

6.      Defendant UPS Ground Freight, Inc. is a Division of United Parcel Service of America, Inc., doing business as UPS Freight, is a Virginia corporation licensed and doing business in Kansas. At all relevant times, UPS Freight has continuously been an employer with approximately 12,000 employees engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7); and is a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7.      Rule 19 Defendant International Brotherhood of Teamsters is a party to a collective bargaining agreement with Defendant UPS Freight; in its absence, complete relief cannot be accorded among the other parties.

## ADMINISTRATIVE PROCEDURES

8.      On July 17, 2013, Thomas Diebold filed a timely charge of discrimination with the Commission alleging violations of the ADA by UPS Freight.

9.      After investigation, on July 24, 2015, the Commission issued to UPS Freight a Letter of Determination finding reasonable cause to believe that it violated the ADA and inviting it to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10.      The Commission engaged in communication with UPS Freight to provide the company the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11.      The Commission was unable to secure from UPS Freight a conciliation agreement acceptable to the Commission.

12.      On September 22, 2015, the Commission issued to UPS Freight a Notice of Failure of Conciliation.

13.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

### A.  Discrimination Against Thomas Diebold.

14.      Thomas Diebold began working as a driver for UPS Freight in 2006 after UPS acquired Overnite Transportation and Overnite Transportation officially became UPS Ground Freight, Inc.

15.     In January 2013, Diebold was working as a road driver for UPS Freight.

16.     The road driver job required a commercial driver's license (CDL) and a valid medical examiner's certificate.

17.     On January 21, 2013, Diebold suffered a minor stroke.

18.     After a short stint of physical therapy during paid time off, Diebold returned to work as a road driver.

19.     On April 29, 2013, during his annual driver's medical examination, Diebold's medical examiner's certificate was not reissued because he disclosed he had suffered a stroke.

20.     Diebold was not able to work as a road driver without a medical examiner's certificate pursuant to Department of Transportation regulations.

21.     Despite not having a medical examiner's certificate, Diebold maintained his CDL.

22.     On or about May 7, 2013, Diebold participated in a phone call with UPS Freight management and local union officials and was told he could start working as a dock worker the following week, starting on May 13, 2013.

23.     Other UPS Freight employees who were unable to work as road drivers because of non-medical reasons, such as being convicted of driving while intoxicated, were allowed to work as dock workers.

24.     On or about May 10, 2013, UPS Freight told Diebold that "the deal fell through" and not to report to work on May 13, 2013.

25.     UPS then asked Diebold to prove he was physically qualified to work on the dock.

26.     In addition to objecting to not being treated the same as those who were unable to work as road drivers because of convictions for driving while intoxicated, Diebold also objected to UPS Freight's demand for medical clearance because his loss of the medical certificate was only related to his ability to work as a road driver.

27.     Despite his objections, on May 17, 2013, Diebold provided UPS with a doctor's note stating that he could perform all the essential functions of dock work.

28.     UPS still did not allow him to begin work on the dock.

29.     On May 29, 2013, Diebold filed a union grievance.

30.     On August 26, 2013, and then again on December 6, 2013, UPS Freight proposed a resolution to the union, offering to reassign Diebold as a part-time casual dock worker at a rate of $22.355 per hour (less than the full dock worker pay rate of $25.55 and less than the rate paid those who were unable to work as road drivers because of convictions for driving while intoxicated).

31.     Diebold did not accept the offer.

32.     On or about December 31, 2013, Diebold had a physical and renewed his medical examiner's certificate.

33.     Diebold returned to work as a road driver on or about January 14, 2014.

34.     Diebold retired from UPS Freight in August 2015.

**B.  Current Collective Bargaining Agreement.**

35.     On January 15, 2014, a new collective bargaining agreement, the National Master UPS Freight Agreement for the Period August 1, 2013 through July 31, 2018 (*2013-2018 CBA*) was ratified by UPS Freight and Rule 19 Defendant International Brotherhood of Teamsters.

36.     A true and correct copy of the _2013-2018 CBA_ is attached as Exhibit A.

37.     Article 21, Section 3, of the _2013-2018 CBA_, titled "Medical Disqualification", states:

>   (a)  A driver who is judged medically unqualified to drive, but is considered physically fit and qualified to perform other inside jobs, will be afforded the opportunity to . . . [do] such work until he/she can return to his/her driving job. . . . While performing the inside work, the driver will be paid ninety percent (90%) of the appropriate rate of pay for the full-time classification of work being performed. The Company shall attempt to provide eight (8) hours of work, if possible, out of available work.

Exhibit A, at 38.

38.     Article 21, Section 2, of the _2013-2018 CBA_, titled "Leave of Absence", states:

>   (a)  When any employee in any job classification requiring driving has his/her operating privilege or license suspended or revoked for reasons other than medical disqualification or those for which the employee can be discharged by the company. . . . The employee will be given available work opportunities to perform non-CDL required job functions.

_Id._, at 37.

39.     Pursuant to Article 21, Section 2(a), of the *2013-2018 CBA*, UPS Freight provides non-CDL-required (non-driving) work at the full rate (100%) of pay to drivers whose CDLs are suspended or revoked for non-medical reasons, including convictions for driving while intoxicated. *Id.*, at 37.

40.     Pursuant to Article 21, Section 3(a), of the *2013-2018 CBA*, UPS Freight provides non-CDL-required (non-driving) work at 90% of the regular rate of pay to drivers who become unable to drive due to medical disqualification, including drivers who are individuals with disabilities within the meaning of the ADA. *Id.*, at 38.

## COUNT I

(ADA Disparate Treatment – Diebold)

41.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

42.     Diebold was a qualified individual under 101(8) of the ADA, 42 U.S.C. § 12111(8).

43.     At the time Diebold was medically disqualified from working as a road driver, he was disabled within the meaning Section 2 of the ADA, 42 U.S.C. § 12102, in that he (a) had a physical or mental impairment that substantially limited one or more major life activities, (b) he had a record of a physical or mental impairment that substantially limited a major life activity, or (c) UPS Freight regarded him has having a physical or mental impairment by subjecting him to an adverse employment action because of an actual or perceived impairment that was not both transitory and minor.

7

44.     UPS Freight's actions complained of in paragraphs 14-34 discriminated against Diebold on the basis of his disability and violated Section 102 of the ADA, 42 U.S.C. § 12112.

45.     The effect of UPS Freight's unlawful actions complained of in paragraphs 14 through 34 deprived Diebold of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

46.     UPS Freight's unlawful employment actions complained of in paragraphs 14 through 34 were intentional. 42 U.S.C. § 1981a.

47.     UPS Freight's unlawful employment actions complained of in paragraphs 14 through 34 were done with malice or reckless indifference to the federally protected rights of Diebold. 42 U.S.C. § 1981a.

48.     As a direct and proximate cause of UPS Freight's unlawful employment actions complained of in paragraphs 14 through 34, Diebold suffered damages.

## COUNT II

(ADA Disparate Treatment – Collective Bargaining Agreement)

49.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

50.     UPS Freight participates in a contractual relationship with Rule 19 Defendant International Brotherhood of Teamsters, memorialized as the _2013-2018 CBA_, that has the effect, thorough Article 21 of that agreement, of subjecting UPS Freight employees with disabilities to discrimination prohibited by Section 102 of the ADA. 42 U.S.C. § 12112 and therefore violates 42 U.S.C. § 12112(b)(2).

51.     Article 21 of the _2013-2018 CBA_ limits, segregates, or classifies UPS Freight employees in a way that adversely affects the opportunities or status of such employees because of their disabilities.

52.     Article 21 of the _2013-2018 CBA_ utilizes standards, criteria, or methods of administration that has the effect of discriminating on the basis of disability.

<u>**PRAYER FOR RELIEF**</u>

_Wherefore,_ the Commission requests that this Court:

A.  Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that UPS Freight violated 102(a) of the ADA, 42 U.S.C. § 12112(a) when it discriminated against Thomas Diebold because he was an individual with a disability as defined by the ADA;

B.  Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that UPS Freight violates 102(b)(2) of the ADA, 42 U.S.C. § 12112(b)(2), by participating in a contractual relationship with Rule 19 Defendant International Brotherhood of Teamsters, memorialized as the _2013-2018 CBA_, that has the effect, thorough Article 21 of that agreement, of subjecting UPS Freight employees with disabilities to discrimination prohibited by Section 102 of the ADA. 42 U.S.C. § 12112;

C.  Grant a permanent injunction enjoining UPS Freight, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating "against a qualified individual on the basis of disability in regard to . . . employee compensation . . . and other terms, conditions, and privileges of employment" in violation of 102(a) of the ADA, 42 U.S.C. § 12112(a);

D.  Order and permanently enjoin UPS Freight and Rule 19 Defendant International Brotherhood of Teamsters to modify the terms of Article 21, Sections 2(a) and 3(a), of the _2013-2018 CBA_ such that they do not violate the ADA;

E.  Order UPS Freight to make Thomas Diebold whole by providing back wages and all appropriate compensatory damages, as well as prejudgment interest, for its acts complained of above;

F.  Order UPS Freight to pay Thomas Diebold punitive damages for its acts complained of above;

G.  Grant such other and further relief as this Court deems necessary and proper in the public interest; and

H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

## DESIGNATION OF PLACE OF TRAIL

The Commission designates Kansas City, Kansas as the place of trial.

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANDREA G. BARAN
Regional Attorney

C. FELIX MILLER
Supervisory Trial Attorney

/s/Grant R. Doty
GRANT R. DOTY, D. Kan. Bar # 78568
Senior Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
St. Louis District Office
1222 Spruce St., Room 8.100
St. Louis, MO 63103
Phone: (314) 539-7918
Fax: (314) 539-7895
Email: grant.doty@eeoc.gov

DAYNA F. DECK, D. Kan. Bar # 78505
Senior Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Kanas City Area Office
400 State Ave, Suite 905
Kansas City, MO 66101
Phone: (913) 551-5848
Fax: (913) 551-6957
Email:  dayna.deck@eeoc.gov

ATTORNEYS FOR PLAINTIFF
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION