**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UPS GROUND FREIGHT, INC., d/b/a UPS FREIGHT, et al.,<br><br>　　　　Defendants. | Case No. 2:17-CV-2453-JAR-JPO |

## MEMORANDUM AND ORDER

Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this suit against Defendant UPS Ground Freight, Inc. ("UPS Freight"), alleging: 1) it violated the Americans with Disabilities Act ("ADA") by discriminating against Thomas Diebold on the basis of his disability (Count I); and 2) it has a facially discriminatory policy against disabled drivers in its current collective bargaining agreement with Defendant Teamsters National UPS Freight Negotiating Committee (the "CBA") (Count II). This matter is before the Court on the EEOC's Motion for Judgment on the Pleadings on Count II, brought under Fed. R. Civ. P 12(c) (Doc. 13). The matter is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants the EEOC's motion for judgment on the pleadings on Count II.

**I.　　Legal Standard**

The Court reviews a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion.[1] To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint

---
[1] *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (citing *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000)).

must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[4] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the Court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[7] Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8] Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9] "A claim has facial plausibility when the plaintiff pleads factual content

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *Id*.

[8] *Id.* at 679.

[9] *Id*.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

If matters outside the complaint are reviewed, the Court generally must convert the motion to a Rule 56 motion for summary judgment.[11] However, the Court may consider documents that are referred to in the complaint.[12] Because the EEOC attached the CBA to the Amended Complaint, the Court may refer to it in resolving this motion without converting it to a motion for summary judgment.

A motion for judgment on the pleadings should not be granted unless the movant has established that there are no material facts to be resolved and that the movant is entitled to judgment as a matter of law.[13]

## II. Factual Allegations

Unless stated otherwise, the following material facts are alleged in the Amended Complaint and undisputed by UPS Freight.[14] The Court will draw all reasonable factual inferences in favor of the nonmoving party, UPS Freight.

UPS Freight is a party to a collective bargaining agreement with Teamsters National UPS Freight Negotiating Committee for the period August 1, 2013 through July 31, 2018. It was ratified in January 2014 and the term is due to expire at the end of this month. Article 21.3 of the CBA, titled "Medical Disqualification," states:

> (a) A driver who is judged medically unqualified to drive, but is considered physically fit and qualified to perform other inside

---

[10]*Id.* at 678.

[11]Fed. R. Civ. P. 12(d).

[12]*See GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[13]*Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[14]Because the motion only pertains to Count II, the Court will not discuss the factual allegations regarding Thomas Diebold.

jobs, will be afforded the opportunity to displace the least senior full-time or casual inside employee at such work until he/she can return to his/her driving job. However, if the displacement of a full-time employee with a CDL would negatively affect the employer's operations, the medically disqualified driver may only displace a casual inside employee. "Red-circled" non-CDL cartage employees shall not be subject to displacement in this process. While performing the inside work, the driver will be paid ninety percent (90%) of the appropriate rate of pay for the full-time classification of work being performed. The Company shall attempt to provide eight (8) hours of work, if possible, out of available work.[15]

Article 21.2, titled "Leave of Absence," states:

> (a) When an employee in any job classification requiring driving has his/her operating privilege or license suspended or revoked for reasons other than medical disqualification or those for which the employee can be discharged by the Company, a leave of absence without loss of seniority, not to exceed two (2) years, shall be granted for such time as the employee's operating license has been suspended or revoked. The employee will be given available work opportunities to perform non-CDL required job functions.[16]

Under Article 21.2(a), UPS Freight provides non-CDL required (non-driving) work at the full rate (100%) of pay to drivers whose CDLs are suspended or revoked for non-medical reasons, including convictions for driving while intoxicated. Yet under Article 21.3(a), UPS Freight provides full-time or casual inside work at only 90% of the rate of pay for the full-time classification of work being performed by drivers who become unable to drive due to medical disqualifications, including drivers who are individuals with disabilities within the meaning of the ADA.

### III. Discussion

Section 102 of the ADA[17] states, in relevant part:

---

[15]Doc. 4, Ex. A at 38.

[16]*Id*. at 37.

[17]42 U.S.C. § 12112.

4

> a) "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to … employee compensation, job training, and other terms, conditions, and privileges of employment."
> b) As used in subsection (a) of this section, the term "discriminate against a qualified individual on the basis of disability" includes—
>> (2) Participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter.

The EEOC contends the CBA establishes a prima facie case of a discriminatory policy because it pays drivers disqualified for non-medical reasons 100% of pay rate, while paying drivers disqualified for medical reasons 90% of the appropriate rate of pay for the work being performed. UPS Freight responds that judgment on the pleadings is inappropriate because: 1) the EEOC relies upon a selective and erroneous interpretation of the CBA; 2) the CBA contains ambiguities that preclude judgment; 3) "whether the CBA works to the benefit or detriment of a medically disqualified driver depends entirely on the particular factual scenario in each case," which requires the Court to engage in a case-by-case analysis to determine if an employee has been discriminated;[18] and 4) the CBA does not limit the opportunities available to individuals with disabilities, but provides additional opportunities beyond what the ADA requires, citing *Eckles v. Consolidated Rail Corp.*.[19] The Court finds these arguments unpersuasive.

First, the Court finds Articles 21.2 and 21.3 plain and unambiguous. Article 21.3(a) plainly states medically disqualified workers who choose to avail themselves of this opportunity will receive 90% of pay. It is immaterial whether medically disqualified drivers have other

---

[18] Doc. 20 at 6.
[19] 94 F.3d 1041 (7th Cir. 1996).

options; paying employees less because of their disability is discriminatory under any circumstance. Accordingly, the EEOC's interpretation of Articles 21.2 and 21.3 was not erroneously selective.

Second, the alleged ambiguities that preclude judgment in the EEOC's favor are attempts to create confusion where none exists. UPS Freight points out that Article 21.3 concerns "inside jobs" and "inside work" and does not necessarily concern the same job position. It then proceeds to give a dictionary definition of the word "afford" to explain how Article 21.3(a) constitutes an additional opportunity rather than a limitation. But these arguments are red-herrings because they fail to address the pertinent issue—pay at less than 100% based on disability.

Third, a case-by-case impact analysis is not required to show that a policy is facially discriminatory. At the liability stage in a pattern-and-practice claim, the plaintiff must show that unlawful discrimination is part of the employer's "standard operating procedure."[20] Under this standard, the government must establish a prima facie case of a discriminatory policy, but it is not required to offer evidence that each individual who may seek relief was a victim of the policy.[21] Articles 21.2 and 21.3 speak for themselves and are facially discriminatory. The Court does not need to examine when the CBA works in favor or against a medically disqualified driver for the EEOC to meet its burden.

Fourth, UPS Freight's reliance upon *Eckles* is misplaced. In *Eckles*, the plaintiff demanded certain accommodations for his epilepsy that infringed on the seniority rights of other employees under the union's collective bargaining agreement.[22] The employer allowed the

---

[20] *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1188 (10th Cir. 2007).
[21] *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358–360 (1977).
[22] *Id.* at 1043.

plaintiff to "bump" a more senior employee, but later rescinded the agreement.[23] The plaintiff then sued his employer and the union, claiming they violated the ADA by refusing to provide a reasonable accommodation for his disability.[24] The court ruled against the plaintiff because the ADA does not require "bumping rights" for individuals, thus the employer could not be liable for failing to provide something that is not compelled by law.[25] *Eckles* is inapposite because it does not deal with paying less based on disability classification, nor does it deal with a facially discriminatory bumping policy.

The Supreme Court has held "[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free . . . not to provide the benefit at all."[26] This means if UPS Freight is going to provide bumping privileges, then it cannot do so in a discriminatory way. UPS Freight has not provided a legitimate reason for paying medically disqualified drivers performing "inside work" less than those disqualified for other reasons under the CBA, and therefore has failed to overcome the EEOC's prima facie case of discrimination.

## IV. Remedies

"A court's finding of [a discriminatory] pattern or practice justifies an award of prospective relief."[27] Such relief could include an "injunctive order against continuation of the

---

[23]*Id.* at 1044.

[24]*Id.*

[25]Doc. 20 at 10; *Eckles*, 94 F.3d at 1049–51.

[26]*Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) (holding that if an employer provides its employees with benefits it is not required to furnish, the benefit "may not be granted or withheld in a discriminatory fashion," and an employer cannot escape liability for offering one benefit on a discriminatory basis simply because it distributes other benefits on a nondiscriminatory basis); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (holding that if TWA chose to grant some captains the "privilege" of bumping less senior flight engineers, it may not deny the opportunity to other captains on the basis of age. Such transfer policy was "discriminatory on its face.")

[27]*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361 (1977).

discriminatory practice."[28]  To obtain a permanent injunction, the movant must show: "1) that it has suffered an irreparable injury, 2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction."[29]

The Court finds the EEOC has demonstrated its claim warrants a permanent injunction. Medically disqualified drivers who availed themselves of bumping rights have suffered irreparable injuries by receiving 10% less pay than their colleagues who were disqualified for nonmedical reasons.  Monetary damages are inadequate to compensate for that injury because they cannot prevent future harm.  The only "hardship" UPS Freight will suffer is paying medically disqualified drivers more (100% pay rate), which is the same rate it already pays its other, non-disabled employees.  The public interest will not be harmed by a permanent injunction prohibiting UPS Freight from discriminating on the basis of disability.  The CBA expires July 31, 2018, at which time the parties to the agreement may renegotiate.  Given that a new CBA will be implemented, permanent injunctive relief is warranted to prevent the same discriminatory practice under a future agreement.

**V.     Conclusion**

The Court finds the EEOC has made a prima facie case that the CBA is discriminatory. UPS Freight has not overcome this showing.  Therefore, the Court hereby grants the subsequent injunctive relief and declares as follows:

---

[28]*Id.*

[29]*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 141 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

1. The CBA in dispute violates 42 U.S.C. § 12112 by discriminating against drivers with disabilities by (1) limiting, segregating, or classifying drivers because of disability adversely affecting the opportunities or status of disabled drivers and (2) using standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability;

2. The CBA in dispute violates 42 U.S.C. § 12112(b)(2) by participating in a contractual relationship that expressly discriminates against medically disabled UPS Freight drivers;

3. UPS Freight, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, are permanently enjoined from discriminating on the basis of disability in violation of 42 U.S.C. § 12112(a) by enforcing Article 21.3 as written[30]; and

4. UPS Freight and the Teamsters National UPS Freight Negotiating Committee are permanently enjoined from negotiating and ratifying terms of the next collective bargaining agreement which would discriminate on the basis of disability in violation of 42 U.S.C. § 12112(a).

**IT IS THEREFORE ORDERED BY THE COURT** that the EEOC's Motion for Judgment on the Pleadings on Count II (Doc. 13) is **granted**.

**IT IS SO ORDERED.**

Dated: July 27, 2018

---

[30] The Court declines the EEOC's request to rewrite this provision. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1152 (10th Cir. 2000) ("Court's duty is to interpret and enforce contracts as written between the parties, not to rewrite or restructure them."). Given the CBA's impending expiration, the parties may negotiate language that complies with the injunction, or may opt to remove the provision altogether.

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE