UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br><br>Plaintiff,<br><br>vs.<br><br>UPS GROUND FREIGHT, INC., d/b/a UPS FREIGHT, et al<br><br>Defendants. | )<br>)<br>)<br>)<br>)  No.  2:17-cv-02453-JAR-JPO<br>)<br>)  **EXPEDITED RULING REQUESTED**<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT UPS GROUND FREIGHT, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO MODIFY AND/OR VACATE THE COURT'S PERMANENT INJUNCTION, MOTION IN THE ALTERNATIVE TO STAY THE PERMANENT INJUNCTION PENDING RATIFICATION AND APPEAL, AND REQUEST FOR EXPEDITED RULING

Defendant UPS Ground Freight, Inc., d/b/a UPS Freight ("UPS"), by and through counsel, and in support of its Motion to Modify and/or Vacate the Court's Permanent Injunction, Motion in the Alternative to Stay Permanent Injunction Pending Ratification and Appeal, and Request for Expedited Ruling, states as follows:

### NATURE OF THE MATTER BEFORE THE COURT

On July 27, 2018, the Court entered its Memorandum and Order, ECF No. 31 (the "Order") which granted partial judgment on the pleadings in Plaintiff Equal Employment Opportunity Commission's ("EEOC") favor and entered a permanent injunction against UPS. This Order should be modified and/or vacated under Federal Rule of Civil Procedure ("Rule") 60(b) because, after extensive negotiations starting in January 2018, UPS and the Teamsters National UPS Freight Negotiating Committee ("Teamsters") voluntarily agreed on a new collective bargaining agreement ("CBA"), which includes a modified Article 21.3 striking the pay reduction language. Pending ratification, this modification should alleviate the Court's

concerns in its Order and comply with the Americans with Disability Act. Accordingly, a permanent injunction is no longer necessary.

Should the Court have any concern that the new tentative CBA has not yet been ratified, UPS alternatively moves the Court to stay the permanent injunction pending ratification of the new CBA as it contains the modified Article 21.3, which again alleviates the Court's concerns expressed in its permanent injunction.

UPS also alternatively asks the Court to stay the permanent injunction while it exhausts its appeal rights because all factors weigh in favor of a stay. In particular, UPS is likely to succeed on the merits of its appeal; UPS will suffer irreparable harm without a stay; the irreparable harm to UPS outweighs any potential temporary harm to other interested parties if a stay is issued; and the public interest is not adversely affected by a stay. In particular, the Order draws legal conclusions and holds UPS to an evidentiary burden-shifting standard without UPS being afforded any opportunity to present evidence to the Court. As a practical matter, UPS already completed negotiations on a new collective bargaining agreement that is in the ratification stages. The Order, however, requires UPS to eliminate the provision at issue as well as conduct a much more comprehensive review of any final agreement in its entirety to ensure compliance with federal disability discrimination laws and without any guidance from the Court, thereby potentially requiring substantial time and expense revisiting the new CBA. Finally, the Order recognizes that any harm to impacted UPS employees is a 10% reduction in pay. If the Order is affirmed on appeal, this harm is calculable and the impacted employees can be appropriately compensated. A stay therefore strikes a proper balance for all interested parties.

## STATEMENT OF FACTS ("SOF")

1. In the Order, the Court granted judgment on the pleadings as to Count II of Plaintiff EEOC's Amended Complaint. Order at 7.

2. The Court also entered a permanent injunction that:

> 3. UPS Freight, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, are permanently enjoined from discriminating on the basis of disability in violation of 42 U.S.C. § 12112(a)by enforcing Article 21.3 as written; and
>
> 4. UPS Freight and the Teamsters National UPS Freight Negotiating Committee are permanently enjoined from negotiating and ratifying terms of the next collective bargaining agreement which would discriminate on the basis of disability in violation of 42 U.S.C. § 12112(a).

*Id.* at 9.

3. The National Master UPS Freight Agreement (i.e. the CBA) expired July 31, 2018. Exhibit A to Amended Complaint, ECF No. 5-1, at 1, 94 (Article 49).

4. Negotiations on a new CBA began on January 21, 2018, and a tentative agreement was reached on July 12, 2018. Declaration of Chuck Schmidbauer attached hereto as Exhibit A, at ¶ 4.

5. The new tentative CBA contains the following new Article 21.3, which shows the deleted language (struck through) from the prior CBA:

> **ARTICLE 21**
> **UNION ACTIVITIES/LEAVE OF ABSENCE**
> **Section 3. Medical Disqualification**
> (a) A driver who is judged medically unqualified to drive, but is considered physically fit and qualified to perform other inside jobs, will be afforded the opportunity to displace the least senior fulltime or casual inside employee at such work until he/she can return to his/her driving job. However, if the displacement of a full-time employee with a CDL would negatively affect the employer's operations, the medically disqualified driver may only displace a casual inside employee. "Red-circled" non-CDL cartage employees shall not be subject to displacement in this process. While performing the inside work, the driver will be paid ~~ninety percent (90%)~~ of the appropriate rate of pay for the full-time classification of work being performed. The Company shall attempt to provide eight (8) hours of work, if possible, out of available work.

3

*Id.* at ¶ 5.

6.	Prior to the Court's Order, the new tentative CBA was sent to local unions for consistency review and to make any necessary changes to local agreements. *Id.* at ¶ 6.

7.	A vote on the new tentative CBA is scheduled to take place the first week of October, 2018. *Id.* at ¶ 7.

8.	The CBA governs approximately 11,736 employees and involves 129 local unions. *Id.* at ¶ 8.

9.	The new tentative CBA would retroactively apply for the period August 1, 2018 through July 31, 2023. *See* new tentative CBA, attached as Exhibit B.

## QUESTIONS PRESENTED

1.	Should the Court exercise its discretion afforded under Rule 60(b) to modify and/or vacate its permanent injunction given that the new tentative CBA should resolve the need for a permanent injunction and, in turn, eliminate the necessity for prospective injunctive relief?

2.	Should the Court, alternatively, exercise its discretion to stay the permanent injunction pending ratification of the new CBA and UPS' appeal when the new tentative CBA will alleviate the Court's concerns and, in addition, the factors for evaluating a stay pending an appeal weigh in favor of a stay?

## ARGUMENT

**I.	This Court should modify and/or vacate its permanent injunction under Rule 60(b) as such relief no longer is necessary or serves the public interest**.

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (5) . . . . applying it prospectively is no longer equitable." Indeed, this Court has the power to modify or vacate a permanent injunction as a corollary of its duty to supervise and enforce that order. *See United*

4

*States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions . . . . A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."); *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) ("There is also no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.").

UPS and the Teamsters have been negotiating for approximately seven months on a new five-year CBA to take effect retroactively on August 1, 2018. SOF ¶¶ 4, 9. Subsequent to the Court's Order, UPS and the Teamsters reached a tentative deal that modifies Article 21.3. SOF ¶¶ 4, 5.  If ratified, this new provision should comply with the Court's Order and the Americans with Disabilities Act. *See generally* SOF ¶ 5; Exhibit B.  As a result, the Court's concerns raised in its Order would be alleviated and the need for a permanent injunction is now unwarranted. Any prospective injunctive relief would no longer be needed.

Rather, the permanent injunction will disserve the parties and the public interest by potentially hindering ratification of the new tentative CBA with the new Article 21.3. This likely unintended consequence has caused the permanent injunction to become inequitable and likely contrary to the Court's purpose for injunctive relief.  Accordingly, given the change of conditions (the likely ratification of a modified Article 21.3), UPS respectfully asks the Court to modify and/or vacate its prior Order pursuant to Rule 60(b) by eliminating the provisions of its permanent injunction which states:

> 3. UPS Freight, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, are permanently enjoined from discriminating on the basis of disability

> in violation of 42 U.S.C. § 12112(a) by enforcing Article 21.3 as written; and
>
> 4. UPS Freight and the Teamsters National UPS Freight Negotiating Committee are permanently enjoined from negotiating and ratifying terms of the next collective bargaining agreement which would discriminate on the basis of disability in violation of 42 U.S.C. § 12112(a).

## II.   Alternatively, this Court should stay its permanent injunction pending ratification and appeal because the new tentative CBA alleviates the need for a permanent injunction and the balancing of factors to grant a stay weighs in favor of a stay.

Should the Court decline to grant UPS' motion to modify/vacate, UPS alternatively seeks a stay of the Court's permanent injunction to preserve the status quo while UPS and the Teamsters ratify the new tentative CBA with the modified Article 21.3. This Court has discretion under Rule 62(c) to suspend or modify the permanent injunction. The new tentative CBA, if ratified, would eliminate the need for any permanent injunction as explained above. Enforcing the permanent injunction during the ratification process will therefore serve no purpose. Rather, it may stymie the potential ratification of the new tentative CBA, potentially significantly impacting thousands of union employees, UPS and the public. A stay of this matter pending appeal will not only protect the interests of the parties in this lawsuit, but also the public at large. Thus, a stay is warranted.

In addition, if the Court declines to modify and/or vacate its permanent injunction, a stay is warranted while UPS appeals the Court's Order. Indeed, the four factors for evaluating a stay pending an appeal weigh in favor of a stay. These factors include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The balancing of these factors should be considered on a

case-by-case basis and no one factor is determinative. *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 163 F.R.D. 612, 615 (D. Kan. 1995).

      **A.**      **Success on the merits of UPS' appeal is likely.**

           *1.*      *UPS is likely to succeed in appealing the Order's liability analysis.*

Ultimate success on the merits need not be a mathematical probability where the case involves substantial legal questions. *Thiry v. Carlson*, 891 F. Supp. 563, 566 (D. Kan. 1995). This factor is satisfied if the other three factors favor a stay and the case presents a difficult issue meriting more deliberate consideration. *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996). As discussed below and throughout this brief, the remaining factors weigh in favor of issuing a stay.

The significance of finding liability solely on the pleadings and the resulting nationwide permanent injunction merits closer consideration by the Tenth Circuit. This is particularly so here because the Court's permanent injunction is the exclusive result of the Court's surface reading of the CBA without any evidentiary hearing concerning the factual application of the provisions at issue. While the Court disagreed with UPS' arguments in opposition to liability, the Court did so by reaching multiple legal conclusions on the issues of ambiguity, the parties' intent, the meaning of various terms and phrases utilized in the provisions, and in construing new obligations imposed by UPS' granting of bumping rights that are not otherwise required under the law. Because the "Circuit may come to a different conclusion about one of these threshold determinations" the "safer and wiser course" is to allow a stay. *See Marie v. Moser*, 65 F. Supp. 3d 1175, 1206 (D. Kan. 2014).

Furthermore, UPS respectfully points out that the Court misapplied *Int'l Bhd. of Teamsters v. United States* in concluding that injunctive relief was warranted because it believed

7

the EEOC made a prima facie showing of discriminatory policy or practice. *Teamsters* applies to pattern and practice claims brought pursuant to section 707 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a). 431 U.S. 324, 328 (1977). The EEOC explicitly alleged a section 706 claim under 42 U.S.C. § 2000e-5(f)(1). Amended Complaint, ECF No. 5, at ¶ 3. Count II is labeled a disparate treatment claim. *Id.* at 8. The EEOC therefore waived a claim for disparate impact based on pattern or practice. *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1299 (10th Cir. 2016).

In *Teamsters*, the Supreme Court adopted a burden shifting model for pattern or practice claims. 431 U.S. at 360. The government has the initial burden of a prima facie case showing that unlawful discrimination is "a regular procedure or policy followed by an employer or group of employers." *Id.* The burden then shifts to the employer to demonstrate that the government's "proof is either inaccurate or insignificant." *Id.* This may include evidence that there were "too few employment decisions to justify the inference that it engaged in a regular practice of discrimination." *Id.* If the employer fails to rebut the government's prima facie case, then the Court may find the existence of a discriminatory pattern or practice without further evidence and award prospective relief such as an injunctive order. *Id.* at 361.

The Order, however, denied UPS any opportunity to present evidence rebutting a prima facie showing of a discriminatory policy. The pleadings do not establish undisputed facts as to how the CBA provisions at issue were actually applied or whether there are a significant number of employees impacted. There are no undisputed facts that UPS regularly engaged in discriminatory conduct. By addressing the issues through a motion for judgment on the pleadings, UPS was procedurally denied an opportunity to present evidence rebutting the EEOC's assertions. As a result, the Order effectively requires a defendant to affirmatively plead

evidence rebutting an assertion of pattern or practice. Burden shifting models under federal discrimination laws are evidentiary standards, not pleading requirements. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

### 2. UPS is likely to succeed in appealing the Order's permanent injunction.

Regardless of the Tenth Circuit's review of the Order's liability analysis, UPS respectfully explains it is likely to succeed on the merits challenging the relief provided under the Order. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). If less drastic remedies are available, no injunction is warranted. *Id.* The Order deems the "pertinent issue" here to be "pay at less than 100% based on disability." Order at 6. In other words, the only redress necessary is for UPS to compensate disabled employees at the same rate as others. Indeed, the Order contends that the only "hardship" to UPS under the permanent injunction is that UPS will be required to pay medically disqualified drivers more (an unsupported conclusion disputed for reasons discussed below). Order at 8.

Simple economic losses that can be compensated with monetary damages do not constitute irreparable harm. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Further, the Court correctly points out in its Order, "[t]o obtain a permanent injunction, the movant must show . . . 'that remedies available at law, such as monetary damages, are inadequate to compensate for that injury . . . .' " Order at 8 (quoting *Monsanto*, 561 U.S. at 141). Yet, the Order fails to explain why monetary compensation would be inadequate relief for any medically disqualified driver that received 10% less pay than non-medically disqualified colleagues. If medically disqualified drivers are indeed injured, the law provides an adequate remedy to compensate them: monetary damages calculated as the 10% difference in pay

9

multiplied by the employee's hours worked. This simple calculation of monetary damages provides an adequate remedy at law. The Order's conclusory findings of irreparable harm are grounds for reversal. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004).

The permanent injunction imposed by the Court is also overly broad. The Order provides that UPS is "permanently enjoined from negotiating and ratifying terms of the next collective bargaining agreement which would discriminate on the basis of disability in violation of 42 U.S.C. § 12112(a)." Order at 9. That portion of the injunction extends beyond any alleged discriminatory practice at issue in this case and instead purports to prohibit UPS from discriminating without limitation against qualified individuals with disabilities. "Injunctions that broadly order the enjoined party simply to obey the law and not violate the statute are generally impermissible." *N.L.R.B. v. U.S. Postal Serv.*, 486 F.3d 683, 691 (10th Cir. 2007). The Order therefore exposes UPS to potential contempt proceedings for any new CBA provision that is later determined to be discriminatory.

The Order is also critically vague which is of particular concern because the Order directs UPS to negotiate a new CBA based on the Court's analysis and merely prohibits UPS from "enforcing Article 21.3 as written . . . ." Sweeping prohibitions are contrary to Rule 65's requirement that every order granting injunctive relief "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(C). The rule is construed strictly and its plain language given effect to prevent confusion for the parties bound by the order and to aid the appellate court in identifying its intended scope. *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 371 (10th Cir. 1996).

The Order here offers no guidance as to a minimal standard UPS must implement. The Court's dissatisfaction with the 10% pay reduction is apparent from the Order's liability analysis. But the Order rejects Article 21.3 in its entirety, not just the 10% pay reduction. The Order therefore fails to describe in reasonable detail which portions of Article 21.3 are unenforceable and instead only refers to the written document. This is contrary to Rule 65.

The Order's finding of liability presents substantial legal questions that merit further consideration by the Tenth Circuit. The permanent injunction imposed by the Order lacks a prerequisite finding of irreparable injury and is otherwise overly broad and vague. As a result, success on the merits of the appeal is likely.

### B. UPS will be irreparably harmed without a stay.

The Order's conclusion against any potential harm to UPS by a permanent injunction demonstrates the danger of granting extraordinary relief based solely on the pleadings. UPS is irreparably harmed by the permanent injunction because a new CBA has already been negotiated and is currently in the ratification process. SOF at ¶¶ 4-7. As observed in the Order, the CBA at issue expired on July 31, 2018—just four days after the Order. Negotiations began in January 21, 2018 and continued until July 12, 2018. SOF at ¶ 4. The new tentative CBA currently under final review maintains a modified Article 21.3 (agreed on post the Court's Order) which should comply with the Court's Order. SOF at ¶ 5. But, the Order requires UPS to renegotiate the old CBA to be in compliance with the Order. This includes potentially revising the new tentative CBA not just to eliminate the provision (now modified) at issue, but to ensure that nothing in the new CBA is unintentionally discriminatory on the basis of disability. This is something that UPS must do, however, without any guidance from the Court beyond the provisions discussed in the Order. If a stay is not permitted, substantial time and expense may be consumed to complete this

onerous task and may hinder ratification.

### C. Other interested parties will not be injured by a stay.

As explained throughout, the new tentative CBA should resolve the issues presented in the Court's Order if it becomes ratified. Thus, a permanent injunction will accordingly serve no helpful purpose. Rather, it may delay ratification of the new tentative CBA and harm the interests of the parties and the public.

Even without the new tentative CBA, any potential harm to employees identified in the Order is the 10% pay reduction. A stay will not cause any additional harm to employees that cannot be addressed with back pay if the Court's Order is affirmed. The certain and permanent damage to UPS, and the public, outweighs any temporary delay in the additional compensation of 10% to employees actually impacted by the CBA provision at issue, if any. *Rothberg v. Law Sch. Admission Council*, 102 F. App'x 122, 126 (10th Cir. 2004).

### D. A stay will not adversely affect the public interest.

UPS does not deny that eradicating discrimination is an important public interest. But a temporary stay while UPS appeals the Order does not undermine this public interest. If the Order is affirmed, the Court can then declare as void any offending provision in any new CBA and impacted employees can be compensated with back-pay. A stay strikes a fair balance between the rights of all interested parties pending the outcome of the appeal. *Thomas v. City of Evanston*, 636 F. Supp. 587, 590 (N.D. Ill. 1986). Indeed, as explained throughout, a stay will promote the public interest through the potential ratification of a new tentative CBA with a modified Article 21.3.

**III.    An expedited ruling is respectfully requested.**

Given the significant and immediate impact the Court's permanent injunction may have on the ongoing ratification of the new tentative CBA, UPS respectfully asks the Court to expedite its ruling on the issues presented herein. UPS has contacted Plaintiff's counsel to determine their position on these issues, and Plaintiff intends to oppose this motion.

## CONCLUSION

The Court should modify and/or vacate its permanent injunction under Rule 60(b) because changed conditions (i.e. the potential ratification of the new tentative CBA) have rendered the need for a permanent injunction unnecessary.  Alternatively, the Court should stay the enforcement of the permanent injunction pending ratification and on appeal because the modified Article 21.3 should alleviate the Court's concerns and all four factors for issuing a stay weigh in favor of a stay.  UPS further respectfully requests that the Court issue a ruling on its motion at its earliest convenience after all parties have been heard.

Respectfully submitted,

ARMSTRONG TEASDALE LLP

By:   /s/    *Shelley I. Ericsson*
Shelley I. Ericsson            #19098
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (facsimile)
sericsson@armstrongteasdale.com

Daniel K. O'Toole #38051
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
314.621.5070
314.621.5065 (Facsimile)
dotoole@armstrongteasdale.com

*Attorneys for Defendant UPS Ground Freight, Inc., d/b/a UPS Freight*

## **CERTIFICATE OF SERVICE**

This is to certify that on Thursday, August 23, 2018, a true and accurate copy of the above and foregoing was e-filed with the Court using the CM/ECF system which sent notification to all parties entitled to service.

          /s/      *Shelley I. Ericsson*