**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 17-CV-2453-JAR-JPO** |
| **UPS GROUND FREIGHT, INC., d/b/a UPS FREIGHT, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this suit against Defendant UPS Ground Freight, Inc. ("UPS Freight") to correct unlawful employment practices on the basis of disability in violation of the Americans with Disabilities Act ("ADA"). The Court granted EEOC's Motion for Judgment on the Pleadings on Count II, brought under Fed. R. Civ. P 12(c), and granted injunctive relief prohibiting continuation of the discriminatory practice and policy.[1] This matter is now before the Court on UPS Freight's Motion to Modify and/or Vacate the Court's Permanent Injunction and Motion in the Alternative to Stay the Permanent Injunction Pending Ratification and Appeal (Doc. 32). For the reasons explained in detail below, the Court grants in part UPS Freight's motion to modify the injunction and denies its request for a stay.

---

[1] Doc. 31.

## I.      Procedural and Factual Background

The EEOC filed a two-count action to correct unlawful employment practices, alleging (1) UPS Freight violated the ADA by discriminating against Thomas Diebold on the basis of his disability (Count I); and (2) UPS Freight has a facially discriminatory policy against disabled drivers in its current 2013–2018 Collective Bargaining Agreement "CBA") with Defendant Teamsters National UPS Freight Negotiating Committee (Count II). The focus of Count II is Article 21.2 and Article 21.3 of the CBA. UPS Freight filed an Answer admitting (1) the CBA attached as Exhibit A to the Amended Complaint is a true and correct copy;[2] (2) that UPS Freight, "pursuant to Article 21, Section 2(a), of the 2013–2018 CBA, provides non-CDL required (non-driving) work at the full rate (100%) of pay to drivers whose CDLs are suspended or revoked for non-medical reasons, including convictions for driving while intoxicated";[3] and (3) UPS Freight, "pursuant to Article 21, Section 3(a) of the 2013–2018 CBA . . . provides full-time or casual inside work at 90% of the rate of pay for the full-time classification of work being performed to drivers who are judged medically unqualified to drive."[4]

The EEOC moved for judgment on the pleadings under Fed. R. Civ. P. 12(c), arguing that UPS Freight's admissions were sufficient to prove the existence of a discriminatory policy and meet the EEOC's burden to make a prima facie case of discrimination. The Court agreed that UPS Freight's additional explanations regarding when Article 21.3(a) applies were immaterial, because there are no circumstances under which paying a disabled driver 90% of what others

---

[2]Doc. 10, ¶ 36.

[3]*Id.*, ¶ 39.

[4]*Id..*, ¶ 40.

earn is legal under the ADA.[5]  On July 27, 2018, the Court entered partial judgment on the pleadings on Count II as follows:

1. The CBA in dispute violates 42 U.S.C. § 12112 by discriminating against drivers with disabilities by (1) limiting, segregating, or classifying drivers because of disability adversely affecting the opportunities or status of disabled drivers and (2) using standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability;

2. The CBA in dispute violates 42 U.S.C. § 12112(b)(2) by participating in a contractual relationship that expressly discriminates against medically disabled UPS Freight drivers.[6]

The Court entered a permanent injunction that:

3. UPS Freight, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, are permanently enjoined from discriminating on the basis of disability in violation of 42 U.S.C. § 12112(a) by enforcing Article 21.3 as written;[7] and

4. UPS Freight and the Teamsters National UPS Freight Negotiating Committee are permanently enjoined from negotiating and ratifying terms of the next collective bargaining agreement which would discriminate on the basis of disability in violation of 42 U.S.C. § 12112(a).[8]

On August 23, 2018, UPS Freight moved to modify and/or vacate the permanent injunction under Fed. R. Civ. P. 60(b)(5) or, in the alternative, to stay the permanent injunction pending ratification of the new CBA.  UPS Freight represented that if the request was denied, it intended to appeal the Order to the Tenth Circuit Court of Appeals.[9]  In its motion, UPS Freight stated the CBA had expired July 31, 2018, negotiations on a new CBA began in January 2018, and a tentative "hand shake" agreement was reached on July 12, 2018.[10]  The tentative new CBA

---

[5]Doc. 31 at 5–6.

[6]*Id.*at 9.

[7]The Court declined the EEOC's request to rewrite this provision. *Id.* n.30.

[8]*Id*. at 9.

[9]Doc. 32.

[10]Declaration of Chuck Schmidbauer, Doc. 33, Ex. A, ¶ 4.

contains the following revised Article 21.3, which shows the language struck through from the

prior CBA:

> A driver who is judged medically unqualified to drive, but is considered physically fit and qualified to perform other inside jobs, will be afforded the opportunity to displace the least senior fulltime or casual inside employee at such work until he/she can return to his/her driving job. However, if the displacement of a full-time employee with a CDL would negatively affect the employer's operations, the medically disqualified driver may only displace a casual inside employee. "Red-circled" non-CDL cartage employees shall not be subject to displacement in this process. While performing the inside work, the driver will be paid ~~ninety percent (90%) of~~ the appropriate rate of pay for the full-time classification of work being performed. The Company shall attempt to provide eight (8) hours of work, if possible, out of available work.[11]

The new CBA would retroactively apply for the period August 1, 2018 through July 31, 2023.[12]

UPS Freight argued that the permanent injunction should be modified and/or vacated in light of

the new tentative CBA that was in the process of ratification that included a modified Article

23.1, which eliminates the need for an injunction.

      The EEOC opposed UPS Freight's motion, and ultimately sought leave to file a sur-

response to address new arguments raised in UPS Freight's reply brief claiming that the

injunction should be vacated because it was an "obey the law" injunction and thus impermissible

under Fed. R. Civ. P. 65(d).[13]  After the EEOC advised in its proposed sur-response that it would

not oppose narrowing the terms of the second part of the injunction, the Court suggested the

parties endeavor to submit a proposed agreed order on UPS Freight's motion.[14]  UPS Freight

eventually indicated it was not willing to agree to anything less than vacation of the permanent

---

[11]*Id.*, ¶ 5 (emphasis added).

[12]*Id.*, Ex. B.

[13]Docs. 35, 38.

[14]Doc. 40.

injunction, however, and the Court granted the EEOC leave to file a sur-response. UPS Freight then clarified in its sur-reply that it was not open to modification, but instead was seeking elimination of the injunction,[15] and contemporaneously filed a Notice of Appeal of the Court's Order.[16]

On October 17, 2018, UPS Freight was granted leave to file a supplemental brief.[17] UPS Freight informed the Court that the "hand shake" agreement on the new CBA was sent to the union membership for a vote the first week of October, but was voted down and not ratified by the union members—not UPS Freight or the Teamsters.[18] As a result of the failed vote, UPS Freight and the Teamsters will return to the bargaining table.[19] UPS Freight represents that it has no intention to change the proposed Article 21.3, which eliminates the 90% pay language, nor does UPS Freight expect the Teamsters to seek to amend the proposed Article 21.3.[20] UPS Freight further represents that since the time of the Court's Order imposing a permanent injunction against UPS Freight and the Teamsters, UPS Freight has not applied the 90% pay provision set out in Article 21.3 as it existed in the CBA that expired on July 31, 2018, and that it fully intends to continue this practice.[21]

---

[15] Doc. 41.

[16] Doc. 42.

[17] Doc. 51.

[18] Doc. 52.

[19] *Id.*

[20] *Id.*

[21] *Id.*

## II.    Discussion

### A.  Rule 60(b)(5)

A motion for relief from judgment under Fed. R. 60(b) is an extraordinary remedy and may be granted only in exceptional circumstances.[22]  Such a motion may not be used as a substitute for direct appeal.[23]  Rather, Rule 60(b)(5) permits a district court to modify or vacate a permanent injunction when "applying it prospectively is no longer equitable."[24]  "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law'" has occurred since the judgment and those changes warrant modification of the injunction or decree.[25]  Changed factual circumstances may warrant modification when the injunction "proves to be unworkable because of unforeseen obstacles," the changed circumstances "make compliance with the [injunction] substantially more onerous," or when "enforcement of the [injunction] without modification would be detrimental to the public interest."[26]

Courts "should deny a party's request for modification . . . if it merely establishes that 'it is no longer convenient [for the movant] to live with the terms'" of the injunction or consent decree.[27]  "The party seeking relief bears the burden of establishing that changed circumstances

---

[22]*Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000).

[23]*Id.*

[24]Fed. R. Civ. P. 60(b)(5).

[25]*Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

[26]*Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1194 (10th Cir. 2018) (quoting *Rufo*, 502 U.S. at 384).

[27]*Id.* (quoting *Rufo*, 502 U.S. at 383).

warrant relief, . . . but once a party carries this burden, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'"[28]

UPS Freight initially cited two changed facts in support of its request for relief: (1) that subsequent to the Court's Order, UPS Freight and the Teamsters reached a tentative deal that modifies Article 23.1 to eliminate the 90% pay for medically disqualified drivers; and (2) the likely ratification of a modified Article 23.1. Taken together, UPS Freight argues, these changed facts render the permanent injunction no longer equitable. In its reply, however, UPS Freight argued that the injunction should be vacated because it is a prohibited "obey the law" mandate. Although the EEOC objected to this new argument as outside the factors the Court can consider in ruling on a Rule 60(b)(5) motion, it read UPS Freight's reply brief to mean it was open to the Court narrowing the injunction and proposed modifications of the second part of the injunction to narrow the scope and limit its application to drivers. As noted above, UPS Freight subsequently advised the Court that it was not open to modification of the injunction, but rather was requesting the Court vacate the injunction entirely.

UPS Freight does not address the first part of the injunction—the prohibition against "enforcing Article 23.1 [of the current 2013–2018 CBA] as written" until the new CBA is ratified. This part of the injunction expires by its own terms when the next CBA is ratified and the current Article 23.1 is no longer operational. Of course, ratification did not occur as anticipated the first week of October 2018, and UPS Freight does not estimate when another vote will be scheduled. While UPS Freight claims that it is now complying with this part of the injunction, the Court declines to vacate the injunction under these tentative circumstances and prior to ratification of the new CBA.

---

[28] *Horne*, 557 U.S. at 433 (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).

UPS Freight's changed circumstances with respect to the second part of the injunction—which enjoins it "from negotiating and ratifying terms of the next [2018–2023 CBA] which would discriminate on the basis of disability in violation of 42 U.S.C. § 12112(a)"—are apparently no longer applicable in light of the recent unsuccessful vote and failure to ratify the "hand shake" agreement.  Instead, the changed circumstances now involve a return to the bargaining table with what UPS Freight claims is an overly broad and vague injunction that does nothing more than command it to comply with Title VII.   UPS Freight argues it is thus left to "aimlessly comply" with a prohibited "obey the law injunction," which in turn may hinder ratification of the new CBA.

The Court is not convinced that the second part of the injunction is an "obey the law" injunction.  This part of the injunction is specifically limited to negotiation of the new CBA and likewise expires upon ratification, and thus has a geographic and temporal limit.[29]   Further, as the EEOC points out, that part of the injunction cites to the "general rule" for this subsection of the ADA, 42 U.S.C. § 12112(a).  Although citing to § 12112 broadly in its declaratory judgment language, the Court quotes two non-general ADA requirements found at § 12112(b)(1) and (b)(3), as referenced by the EEOC in support of its motion for judgment on the pleadings.   And, the language in the declaratory judgment clearly limited the violation to drivers.[30]

---

[29]*Cf. N.L.R.B. v. U.S. Postal Serv.,* 486 F.3d 683, 691 (10th Cir. 2007) (holding injunctions that broadly order the enjoined party simply to obey the law and not violate the statute are generally impermissible) (collecting cases); *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668–69 (10th Cir. 1990) (striking portion of consent decree that "does no more than require the district to obey the law"); *EEOC v. Autozone, Inc.*, 707 F.3d 824, 841–44 (7th Cir. 2013)  (noting that an "injunction that does nothing more than order a defeated litigant to obey the law raises several concerns" including overbreadth and vagueness and may be problematic if it has no geographic or temporal limit).

[30]By contrast, the Court declined to enter a permanent injunction requested by the EEOC "enjoining UPS Freight . . . from discriminating on the basis of disability in violation of 42 U.S.C. § 12112(a)." Doc. 14 at 10.

As UPS Freight notes, however, the EEOC took the position in its response that this part of the injunction could extend to provisions in the CBA beyond Article 23.1 and the realm of this lawsuit that are purportedly discriminatory under the ADA "general rule" that UPS is now enjoined from negotiating and ratifying under the Court's Order.[31]  But the EEOC retreats somewhat from that stance in its sur-response, suggesting the Court narrow the injunction from § 12112(a) to the more precise § 12112(b)(1) and (b)(3), as well as specifically limit it to drivers.

If a party meets its burden of establishing a change in fact or circumstance that warrants modification of an injunction, the court should examine "whether the proposed modification is suitably tailored to the changed circumstance."[32]  Although UPS Freight argues the permanent injunction should be eliminated entirely, the Court agrees that the modification suggested by the EEOC is consistent with the language in the declaratory judgment, and is tailored to the changed circumstances that have evolved while this motion was pending.  Accordingly, the Court modifies the second part of the injunction as follows:

> UPS Freight and the Teamsters National UPS Freight Negotiating Committee are permanently enjoined from negotiating and ratifying terms of the next collective bargaining agreement which would discriminate on the basis of disability in violation of 42 U.S.C. § 12112(b)(1) and (b)(3), specifically (1) limiting, segregating, or classifying drivers because of disability adversely affecting the opportunities or status of disabled drivers and (2) using standards, criteria, or methods of administration that have the effect of discrimination against drivers on the basis of disability.

---

[31]*See* Doc. 35 at 7 ("What UPS Freight does not say in its short two-page Rule 60(b)(5) section . . . is that it has apparently refused to actively comply with its obligation under the injunction 'to ensure that nothing [besides Article 21.3] in the CBA is unintentionally discriminatory on the basis of disability.' . . . Clearly the injunction, and a real threat of possible contempt action, is necessary to get UPS Freight to ensure it stops discriminating against disabled employees.").

[32]*Jackson,* 880 F.3d at 1194 (quoting *Rufo*, 502 U.S. at 391).

This modification is particularly relevant in light of the failed vote requiring UPS Freight and the Teamsters to return to the bargaining table; the narrowed injunctive language will alleviate UPS Freight's concern about its application and ensure compliance when negotiating the new CBA.

## B. Rule 62(c)

UPS Freight requests the Court stay its permanent injunction while this matter is appealed. Fed. R. Civ. P. 62(c) states, in relevant part: "While an appeal is pending from an interlocutory or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Stay of an injunction should first be sought at the district court level.[33] In ruling of a Rule 62(c) motion, courts consider the four so-called *Hilton* factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.[34]

The Court addresses the factors in turn.

## 1. Likelihood of Success on the Merits

This Court's ruling under Fed. R. Civ. P. 12(c) is reviewed under the same de novo standard used for motions to dismiss under Rule 12(b)(6).[35] In applying de novo review, the court "accept[s] the well-pleaded factual allegations in the complaint as true [and] 'resolve[s] all

---

[33]Fed. R. App. P. 8(a)(1)(A).

[34]*Liberty Mut. Fire Ins. Co. v. Clemens Coal Co.,* No. 14-2332-CM, 2017 WL 4758948, at *3 (D. Kan. Oct. 20, 2017) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

[35]*Diversey v. Schmidly,*738 F.3d 1196, 1199 (10th Cir. 2013).

reasonable inferences in the [non-moving party's] favor.'"[36]  The resulting question is whether the complaint states a valid claim.[37]

UPS Freight argues that the Court's finding of liability solely on the pleadings and resulting permanent injunction merits closer consideration by the Tenth Circuit because (1) the Court applied the incorrect burden-shifting model under *International Brotherhood of Teamsters v. United States*;[38] (2) the Court improperly denied UPS Freight the opportunity to present evidence rebutting a prima facie showing of a discriminatory policy; (3) the Court improperly found that UPS Freight made an admission in its Answer about how the CBA is actually applied, as opposed to an admission about the authenticity of the CBA attached to the Complaint; and (4) the Court improperly found, absent facts outside of the pleadings, that medically disqualified individuals are per se disabled under the ADA.  UPS Freight further argues that, regardless of the Tenth Circuit's review of the liability analysis, it is likely to succeed on the merits challenging the relief provided in the Order because (1) monetary compensation for any medically disqualified driver is an adequate remedy; and (2) the injunction is overbroad and critically vague.  UPS Freight's arguments are without merit.

First, with respect to the underlying liability issue, EEOC's lawsuit was filed under Section 706 of Title VII of the Civil Rights Act, challenging UPS Freight's discriminatory policy set forth in the CBA that expressly treated employees differently because of their disability.  UPS Freight argues that claims alleging a "pattern or practice" of discrimination can be brought only under Section 707 of the Civil Rights Act, and that EEOC waived a claim for disparate impact based on pattern or practice when it labeled Count II a "disparate treatment" claim.

---

[36]*Id.* (quoting *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126–27 (10th Cir. 1998)).

[37]*Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).

[38]431 U.S. 324 (1977).

There are two types of Title VII employment discrimination: (1) disparate impact, which involves a facially neutral employment practice resulting in disproportionate impact; and (2) disparate treatment, which involves intentionally discriminatory employment practices.[39]  At issue here is the EEOC's disparate treatment claim based on UPS Freight's facially discriminatory policy that treated disabled drivers disparately.  Section 706 of Title VII authorizes the EEOC to sue an employer and secure relief on behalf of a person or group of aggrieved persons for an employer's unlawful employment practice.[40]  Section 707 of Title VII authorizes the EEOC to sue when it "has reasonable cause to believe that [an employer] is engaged in a pattern or practice" of unlawful discrimination.[41]  "While Congress intended Sections 706 and 707 to address different forms of discrimination with unique remedies, the two are not mutually exclusive, and the EEOC can also utilize a pattern-or-practice theory to recover for aggrieved individuals under Section 706."[42]  Thus, the EEOC is not prohibited from bringing a disparate treatment pattern-or-practice suit under Section 706.[43]

Further, the method of proof for a pattern-or-practice case differs from that used for individual discrimination claims, which are analyzed under the burden-shifting *McDonell Douglas* framework.[44]  In order to prove that an employer acted with discriminatory motive

[39]*See EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1172 (D. N.M. 2012) (citing *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 866–67 (10th Cir. 2007)) (discussing differences between disparate treatment and disparate impact claims).

[40]42 U.S.C. § 2000e-5.

[41]42 U.S.C. § 2000e-6(a).

[42]*EEOC v. Horizontal Well Drillers, LLC*, No. CIV-17-879-R, 2018 WL 3029108, at * 8 (W.D. Okla. June 18, 2018) (citing *Serrano v. Cintas Corp.,* 699 F.3d 884, 894 (6th Cir. 2012)).

[43]*See EEOC v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791, 800 (5th Cir. 2016) (concluding Congress did not prohibit the EEOC from bringing pattern-or-practice suits under Section 706); *Serrano*, 699 F.3d at 896 (holding the district court erred in concluding that the EEOC may not pursue a pattern-or-practice claim pursuant to its authority vested in Section 706).

[44]*Daniels v. UPS, Inc.*, 701 F.3d 620, 633 (10th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

when the plaintiff alleges a pattern or practice of discrimination, the court utilizes the so-called *Teamsters* model.[45]  Under this framework, the plaintiff has a heightened initial burden to establish that: (1) there was unlawful discrimination; and (2) the discrimination "has been a regular procedure or policy followed by an employer . . . ."[46]  Once that showing is made, it is assumed that any particular employment decision during the period in which the discriminatory practice was ongoing was made in accordance with that practice.[47]

An employer responding to a prima facie showing of a pervasive policy of intentional discrimination has the burden to "defeat" the case by "demonstrating that the Government's proof is either inaccurate or insignificant."[48]  UPS Freight argues that the Court denied it the opportunity to present evidence rebutting a prima facie showing of a discriminatory policy, effectively requiring a defendant to affirmatively plead evidence rebutting an assertion of pattern or practice.  But in this case, UPS Freight admitted in its Answer that its policy, consistent with Article 21.3(a) of the CBA, specifies that disabled drivers be paid 90% of what non-disabled employees earn.  Where the EEOC provides direct evidence that a discriminatory policy exists, it meets its burden to establish a prima facie case under the ADA.[49]  Legal admissions are sufficient to prove the existence of a discriminatory policy and meet the EEOC's burden to make a prima facie case of discrimination.[50]

---

[45]*EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1172 (D. N.M. 2012).

[46]*Int'l Brhd. of Teamsters v. United States*, 431 U.S. 324, 360 (1977).

[47]*Id.* at 362.

[48]*Id.* at 360.

[49]*See United States v. City & Cnty. of Denver,* 943 F. Supp. 1304, 1308 (D. Colo. 1996), *aff'd sub nom Davoll v. Webb*, 194 F.3d 1116, 1147–48 (10th Cir. 1999) (quoting *Teamsters*, 431 U.S. at 360).

[50]*Id.* at 1309–10.

In this case, UPS Freight's admissions established liability, as there was no factual question that its policy and practice violated 42 U.S.C. § 12112(b)(1) and (b)(3), or that it was a party to the 2013–2018 CBA that has the effect of discriminating against disabled employees in violation of § 12112(b)(2). The purpose of the *Teamsters* burden-shifting model is to prove whether the employer made an employment decision on a proscribed basis. When the employer admits that the facially discriminatory policy exists—here, classifying employees based on a disability—courts have held the burden-shifting protocol under *Teamsters* is unnecessary.[51]

Moreover, the Court did consider the arguments UPS Freight made in opposition to entry of judgment on the pleadings and found them unpersuasive: that the EEOC relies upon a selective and erroneous interpretation of the CBA, that terms of the CBA are ambiguous, and that the Court is required to engage in a case-by-case analysis to determine if an employee has been discriminated against. Thus, the Court is not persuaded that UPS Freight is likely to succeed on its challenge of the Court's liability analysis or judgment on the pleadings.

Next, with respect to the Court's issuance of a permanent injunction, UPS Freight argues that an injunction was improper because "monetary compensation" could adequately remedy its wrongdoing. This argument is also without merit. Title VII permits the EEOC to enforce statutes that specifically authorize it to obtain injunctive remedies.[52] As the EEOC notes, although litigation brought by the EEOC may include employees it claims were harmed and seek

---

[51]*See Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 988 (9th Cir. 2007) (holding where claim involved facially discriminatory qualification standard, the *Teamsters* burden-shifting protocol is inapplicable); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182–83 (6th Cir. 1996) (noting that when a defendant admits to taking account of disability status, the burden-shifting framework sometimes applicable to disparate treatment claims is unnecessary), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 90 F.3d 1173 (6th Cir. 2012).

[52]*See, e.g.,* 42 U.S.C. § 2000e-5(g)(1) ("If the court finds the [defendant] has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin [it] from engaging in such unlawful employment practice");

individual relief, it is not required and is not the case here. "If the plaintiff does not provide any additional evidence [beyond liability], the court may impose only prospective remedies."[53]  Here, the EEOC did not seek damages in Count II but, rather, sought an injunction to stop current and prevent future illegal discrimination, as specifically authorized by Title VII.[54]  As this Court recognized, monetary damages would be inadequate to compensate for the 10% pay difference because such damages cannot prevent future harm.

Finally, the Court notes that the permanent injunction is not "onerous," but temporally limited until the new CBA is ratified, and is thus narrowly tailored to remedy the harm shown. Further, any claim that the injunction is overbroad and critically vague has been remedied by the Court's modification narrowing the language of the injunction.  Accordingly, UPS Freight has not demonstrated it is likely to succeed on appeal and this factor weighs against a stay.

### 2.  Irreparable Harm

After the Court's Order, UPS Freight took steps to modify Article 23.1 to comply with the permanent injunction.  UPS Freight claims it will be irreparably harmed absent a stay pending appeal because of the time and expense of ensuring that nothing else in the new CBA discriminates on the basis of disability, which might "hinder or delay" ratification.  Since UPS Freight made this argument, however, the CBA was voted down and not ratified by the union members, necessitating a return to the bargaining table.  In light of the Court's modification narrowing the permanent injunction, UPS Freight has the guidance it seeks to determine if it has met the terms of the Court's injunction, which should not hinder or delay ratification beyond the

---

[53]*Semsroth v. City of Wichita,* 304 F. App'x 707, 715–17 (10th Cir. 2008) (citing *Teamsters,* 431 U.S. at 361–62).

[54]*See* 42 U.S.C. § 2000e-5(g)(1) and 6(a).

time necessary to negotiate a new CBA to meet the concerns of the union members. This factor weighs against a stay.

### 3. Injury to Other Parties/Public Interest

Finally, UPS Freight claims that other interested parties will not be injured by a stay, nor will a stay adversely affect the public interest. As the EEOC notes, "[w]hen the EEOC acts [it does so] to vindicate the public interest in preventing employment discrimination."[55] Because neither side shows any specific harm to interested parties or the public, this factor is neutral.

Accordingly, after considering all of the circumstances, the Court concludes that the factors for issuing a stay pending appeal weigh against imposing a stay. UPS Freight's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that UPS Freight's Motion to Modify and/or Vacate the Court's Permanent Injunction and Motion in the Alternative to Stay the Permanent Injunction Pending Ratification and Appeal (Doc. 32) is **granted in part and denied in part.** The Court **modifies** the second part of the permanent injunction as follows:

> UPS Freight and the Teamsters National UPS Freight Negotiating Committee are permanently enjoined from negotiating and ratifying terms of the next collective bargaining agreement which would discriminate on the basis of disability in violation of 42 U.S.C. § 12112(b)(1) and (b)(3), specifically (1) limiting, segregating, or classifying drivers because of disability adversely affecting the opportunities or status of disabled drivers and (2) using standards, criteria, or methods of administration that have the effect of discrimination against drivers on the basis of disability.

**IT IS FURTHER ORDERED BY THE COURT** that UPS Freight's Motion for Stay Pending Appeal is **denied.**

**IT IS SO ORDERED.**

---

[55] *Gen. Tel. Co. of the Nw. v EEOC*, 466 U.S. 318, 326 (1980).

Dated: <u>November 1, 2018</u>

<u>S/ Julie A. Robinson</u>
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE