UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>UPS GROUND FREIGHT, INC., d/b/a UPS FREIGHT, et al,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. 2:17-cv-02453-JAR-JPO<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT UPS GROUND FREIGHT, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNT I OF PLAINTIFF'S AMENDED COMPLAINT**

Defendant UPS Ground Freight, Inc., d/b/a UPS Freight ("UPSF") for its Brief in Support of Motion for Summary Judgment, states as follows:

**I. NATURE OF THE MATTER BEFORE THE COURT**

The Court should enter summary judgment in favor of UPSF on Count I of the EEOC's *Amended Complaint*. The Court previously resolved Count II in the July 27, 2018 Memorandum and Order (ECF No. 31). That ruling concerned the provisions of the collective bargaining agreement entered into between UPSF and Defendant Teamsters National UPS Freight Negotiating Committee that was ratified in January 2014. The remaining allegations before the Court in Count I concern only the EEOC's disability discrimination claims on behalf of Thomas Diebold. The Court's ruling on Count II does not concern the issues before the Court in Count I.

Summary judgment in favor of UPSF is proper on Count I because the EEOC cannot establish a prima facie case of discrimination in violation of the Americans with Disabilities Act of 1990 as amended by the ADA Amendments Act of 2008 ("ADAAA"). Simply stated, Diebold did not have a "disability" as defined by the ADA. Diebold experienced a minor, TIA

stroke in January 2013 for which he was hospitalized for two days. Thereafter, he underwent approximately three weeks of physical therapy. After completion of physical therapy in early February 2013, Diebold returned to his same road driver position with UPSF and performed it without any restrictions and without any issues or help.

In April 2013, however, Diebold lost his medical certification under the commercial vehicle driver regulations of the Department of Transportation ("DOT") when his physician learned during an annual examination that Diebold experienced the January 2013 stroke. While Diebold remained physically capable of performing the road driver position, he was legally unauthorized to drive a commercial motor vehicle under DOT regulations. In other words, Diebold's physical condition did not prevent him from working, DOT regulations did. In January 2014, Diebold became medically authorized to resume driving a commercial motor vehicle under DOT regulations and UPSF returned him to his road driver position. Thereafter, Diebold continued driving until his voluntary retirement in 2015.

The uncontroverted material facts establish that Diebold is not statutorily disabled. He was neither disabled nor had a record of impairment because his stroke did not substantially affect a major life activity. With the exception of less than three weeks, Diebold remained physically capable of performing all functions of the road driver position and Diebold denies ever considering himself to have been disabled. He simply was not authorized by DOT regulation to drive a commercial motor vehicle. There is no evidence that his stroke impacted him in any non-transitory manner or that it precluded him physically from any job.

To the extent the EEOC claims that UPSF regarded Diebold as disabled, that claim also fails because Diebold's stroke was transitory and minor in that its effects lasted less than three weeks. UPSF returned Diebold back to his same road driver position without restrictions in

February 2013 as soon as he completed his physical therapy and only removed him from the position when he lost his medical certification. As soon as he became medically reauthorized, UPSF returned him back to his same road driver position. Thus, there is no reasonable inference that UPSF regarded Diebold as disabled.

Because the EEOC is unable to establish a prima facie case of disability discrimination on behalf of Diebold, summary judgment in favor of UPSF on Count I of the Amended Complaint is proper.

## II.   UNCONTROVERTED MATERIAL FACTS

1. Diebold worked for UPSF as a road driver. *Amended Complaint*, filed on October 6, 2017 (ECF No. 5), attached hereto as Exhibit A, at ¶ 15; UPSF' *Answer and Affirmative Defense to Plaintiff's Amended Complaint*, filed on October 20, 2017 ECF No. 10), attached hereto as Exhibit B, at ¶ 15; *Deposition of Thomas Diebold*, attached hereto as Exhibit C, at 6:02-04.

2. Diebold experienced symptoms of a mild, TIA stroke on or about January 21, 2013. *Equal Employment Opportunity Commission's Responses to Ground Freight, Inc., d/b/a UPS Freight's Request for Admissions*, attached hereto as Exhibit D, at ¶ 1; *Diebold Depo.*, Ex. C, at 27:25-28:06, 29:12-16, 31:02-05.

3. Diebold was hospitalized for approximately two days to conduct tests and was released from the hospital on or about January 23, 2013. *Diebold Depo.*, Ex. C, at 33:24-34:05.

4. Diebold's spouse reported to his UPSF supervisors that he had a stroke requiring hospitalization. *Diebold Depo.*, Ex. C, at 31:24-32:12.

5. After his release from the hospital, Diebold reported to his supervisors that he would have to do physical therapy. *Diebold Depo.*, Ex. C, at 32:13-21.

6. Diebold's UPSF hub manager Jeff Wry told Diebold to just call when Diebold was ready to go back to work. *Diebold Depo.* Ex. C, at 32:22-33:05.

7. Diebold was off work for approximately three weeks to complete physical therapy. *Diebold Depo.*, Ex. C, at 31:20-23, 34:06-17.

8. Upon completion of physical therapy, Diebold's physicians released him back to work with no restrictions. *Diebold Depo.*, Ex. C, at 35:24-36:04.

9. After completing physical therapy, Diebold had no other effects from his stroke that impacted his ability to work. *Diebold Depo.*, Ex. C, at 52:14-53:02.

10. Diebold returned to work with UPSF in early February 2013 to the same road driver position he had before his stroke. *Diebold Depo.*, Ex. C, at 36:07-09, 37:19-24.

11. Diebold performed the functions of the road driver position without difficulty and was not restricted in any way in his ability upon his return in early February 2013. *Diebold Depo.*, Ex. C, at 37:25-38:02, 38:03-05, 38:22-39:02, 39:06-08.

12. Diebold did not need any help whatsoever from UPSF to do his road driver job upon his return in early February 2013. *Diebold Depo.*, Ex. C, at 39:09-14.

13. There were no complaints about Diebold's driving after he returned in early February 2013. *Deposition of Jeff Wry*, attached hereto as Exhibit E, at 27:11-13.

14. No one at UPSF made any statements to Diebold suggesting they had concerns about Diebold's ability to perform as a road driver upon his return in early February 2013. *Diebold Depo.*, Ex. C, at 39:15-19.

15. No one at UPSF said anything to Diebold that suggested they were upset with Diebold in any way because he had a stroke. *Diebold Depo.,* Ex. C, at 39:21-24, 99:01-07.

16. No one in UPSF management ever teased Diebold about his medical condition.

4

*Diebold Depo.*, Ex. C, at 99:17-20.

17. The road driver position required a commercial driver's license and a valid medical examiner's certificate. Amended Complaint, Ex. A, at ¶ 16; Answer, Ex. B, at ¶ 16.

18. DOT regulations required Diebold to submit to annual medical examinations. *Diebold Depo.*, Ex. C, 43:04-18, 44:05-17.

19. On April 29, 2013, during his annual driver's medical examination, Diebold's medical examiner's certificate was not reissued because he disclosed he had suffered a stroke. *Amended Complaint*, Ex. A, at ¶ 19; *Answer*, Ex. B, at ¶ 19.

20. Diebold was not authorized to work as a road driver for UPSF without a medical examiner's certificate pursuant to DOT regulations. *Amended Complaint*, Ex. A, at ¶ 20; *Answer*, Ex. B, at ¶ 20; *Admissions*, Ex. D, at ¶ 4.

21. There were no accommodations that could be made to allow Diebold to perform the essential functions of the road driver job without a medical examiner's certificate. *Admissions*, Ex. D, at ¶ 12.

22. Diebold was sill physically able to perform the road driver job with no problems after April 29, 2013 had he been authorized to drive under DOT regulations. *Diebold Depo.*, Ex. C, at 45:08-46:02, 51:06-25.

23. In 2013 while unauthorized to drive under DOT regulations, Diebold performed some labor for a friend's well drilling and water pump business. *Diebold Depo.*, Ex. C, at 113:11-21.

24. On December 31, 2013, Diebold had a physical examination and obtained a valid medical examiner's certificate. *Admissions*, Ex. D, at ¶ 15.

25. UPSF put Diebold back to work as a UPSF road driver on or about January 14,

2014 as soon as Diebold obtained a valid medical examiner's certificate and became reauthorized under DOT regulations to perform the road driver position. *Amended Complaint*, Ex. A, at ¶ 33; *Answer*, Ex. B, at ¶ 33; *Diebold Depo.*, Ex. C, at 98:20-25.

26.     Diebold voluntarily retired from UPSF effective August 2015. *Admissions*, Ex. D, at ¶ 18.

27.     Diebold does not consider himself to have been disabled at any time following his return to work in early February 2013. *Diebold Depo.*, Ex. C, at 58:12-24.

28.     The EEOC does not allege in this action any failure by UPSF to accommodate Diebold under the ADA. *Equal Employment Opportunity Commission's Responses to UPS Ground Freight's Second Set of Interrogatories*, attached hereto as Exhibit F, at Interrogatory No. 13.

### III.    QUESTION PRESENTED

Whether UPSF is entitled to summary judgment because the EEOC is unable to establish a prima facie case of disability discrimination under the ADAAA.

### IV.    ARGUMENT

Summary judgment shall be granted when the defendant demonstrates that there is no genuine dispute of material fact and that the defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To avoid summary judgment, the plaintiff must identify issues of material fact supported by evidence from which a reasonable jury could return a verdict for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The EEOC alleges disability discrimination on behalf of Diebold in Count I of the *Amended Complaint*. To avoid summary judgment, the EEOC has the burden of demonstrating genuine disputes of material fact that Diebold "(1) is disabled as defined under the ADAAA; (2) he is qualified, with or without

reasonable accommodation by the employer, to perform the essential functions of the job; and (3) he was discriminated against because of his disability." *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016). Because the uncontroverted material facts establish that Diebold was not statutorily disabled or regarded as disabled, summary judgment in favor of UPSF is proper.

### A. Diebold was not statutorily disabled because his January 2013 stroke did not substantially affect a major life activity.

The EEOC asserts Diebold was disabled under the ADAAA and/or UPSF regarded him as having a disability. *Amended Complaint*, at ¶ 43. To constitute a statutory disability protected by the ADAAA, the individual must have "a physical or mental impairment that substantially limits one or more major life activities of such individual...." 42 U.S.C. § 12102(1)(A).[1] "[N]ot every impairment will constitute a disability" under the ADAAA. 29 C.F.R. § 1630.2(j)(1)(ii). A TIA stroke does not in and of itself constitute a disability. *See e.g., Feldman v. Law Enf't Assocs. Corp.*, 955 F. Supp. 2d 528, 539 (E.D.N.C. 2013), *aff'd*, 752 F.3d 339 (4th Cir. 2014) (granting summary judgment because there was no evidence beyond a brief hospitalization that the plaintiff's TIA stroke substantially limited any major life activity). Diebold's stroke was not a substantial impairment and did not affect a major life activity. The EEOC simply cannot establish a prima facie case under the ADA because Diebold never has a "disability."

#### i. Diebold's stroke was not a substantial impairment.

The EEOC's claim fails because Diebold's stroke was only a temporary condition from which he fully recovered and returned to work without restriction within approximately three weeks. SUMF ¶¶ 2-12. It is long established that "[t]he ADA was not designed to apply to temporary conditions." *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir.

---

[1] UPSF will address the EEOC's regarded as theory below in subsection B.

2000). Despite the more recent statutory amendments, it remains under the ADAAA that "'[i]mpairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." 29 C.F.R. § Pt. 1630, App. (quoting Joint Hoyer–Sensenbrenner Statement on the Origins of the ADA Restoration Act of 2008, H.R. 3195).

The Second Circuit Court of Appeals recently affirmed summary judgment because the plaintiff was not disabled under the ADAAA. *Francis v. Hartford Bd. of Educ., City of*, 760 F. App'x 34, 36–37 (2d Cir. 2019). The plaintiff alleged disability due to shoulder and knee injuries. *Id.* at 36. She worked for two months under lifting, pushing, and pulling restrictions for her shoulder. *Id.* She missed some work and then returned to work for five months under no stair climbing, standing, bending, squatting, and kneeling restrictions for her knee. *Id.* "These injuries were too brief and too minor to qualify as disabilities under the ADA." *Id.*

This Court similarly entered summary judgment in favor of a defendant employer where the plaintiff failed to show that her shoulder injury and bowel condition were anything other than temporary impairments. *Peterson v. Garmin Int'l, Inc.*, 833 F. Supp. 2d 1299, 1318 (D. Kan. 2011). There, the plaintiff tore her rotator cuff which required surgery, post-surgery care, and approximately six months of lifting restrictions over the span of one year. *Id.* The plaintiff's bowel condition existed for approximately one year. These impairments despite lasting for approximately one year and despite requiring surgery and other treatment or restrictions did not constitute substantial impairments necessary to constitute a statutory disability. *Id.*

Diebold's stroke was even less significant than the plaintiffs in *Francis* and *Peterson*. Diebold experienced a brief, two-day hospitalization for testing and approximately three weeks of physical therapy. SUMF ¶¶ 3-7. Thereafter, his physicians released him back to work with no restrictions. SUMF ¶ 8. There were no other effects from his stroke and his ability to work

was not impacted. SUMF ¶ 9. Indeed, he returned to work and performed his same position as before without difficulty, without restriction, and without any help whatsoever from UPSF. SUMF ¶¶ 10-12. Although he subsequently became unauthorized to drive due only to DOT regulations, he at all times following his return to work remained physically capable of performing the road driver job with no problems. SUMF ¶ 22. He even performed labor for a friend while unauthorized to drive. SUMF ¶ 23.

Because Diebold's stoke was at most a temporary condition, the EEOC is unable to establish that Diebold experienced a substantial impairment necessary to make a prima facie case of statutory disability.

### ii. Diebold's stroke did not affect a major life activity.

The only major life activity at issue here is the EEOC's assertion that Diebold's stroke affected his ability to work. But Diebold admits that his stroke did not physically affect him in any way other than requiring two or three weeks of physical therapy. SUMF ¶¶ 2-8. He did not consider himself to be disabled. SUMF ¶ 27. Within about three weeks after the stroke, he could—and did—perform the functions of his road driver position without restriction, without any issues, and without assistance from UPSF until he lost his medical certification. SUMF ¶¶ 9-16. Despite losing his medical certification, Diebold could still physically perform the road driver position. SUMF ¶ 22.

To constitute a "disability," the plain language of the ADA requires that the "impairment … limits one or more major life activities." 42 U.S.C. § 12102(1)(A)-(B). Diebold did not have any physical impairment that limited his ability to work. What prevented him from working was not any physical condition or impairment, it was DOT regulations. Diebold was physically capable of working; he just was not authorized by DOT regulations to do so. SUMF ¶¶ 17-21.

9

As a result, he simply did not have a "disability" under the ADA. When Diebold became medically reauthorized, UPSF returned him to the same road driver position which he performed until his voluntary retirement. SUMF ¶¶ 24-26.

The EEOC's own interpretative guidance establishes that an individual's impairment affects the major life activity of working only if "the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities." 29 C.F.R. § Pt. 1630, App. This standard survived the ADAAA amendments. *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011). "[T]o show a disability in the major life activity of working, [the plaintiff] was required, even after the enactment of the ADAAA and the modified EEOC regulations, to demonstrate that she was substantially limited in performing a class of jobs or broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities." *Id.*

As discussed above, Diebold's stroke and his subsequent physical condition did not prevent him physically from performing any job including his road driver position with UPSF. SUMF ¶¶ 9-16, 22. In fact, he successfully worked as a road driver for almost three months after his stroke without issue. SUMF ¶¶ 9-16, 22. He even performed some labor work for a friend while unauthorized medically to drive commercial vehicles. SUMF ¶ 23. There is no evidence that Diebold could not physically drive noncommercial vehicles. As a result, Diebold's stroke as a matter of law did not impair the major life activity of working.

The EEOC emphasizes in the *Amended Complaint* that Diebold was prevented by DOT regulations from working as a road driver after he lost medical certification due to his stroke. The loss of medical certification pursuant to DOT regulations only impacts that individual's

10

ability to perform a particular job—not a class of jobs as required for impairing the major life activity of working.  For example, in *Murphy v. United Parcel Serv., Inc.*, the Supreme Court rejected the argument that evidence of the plaintiff's failure to meet DOT regulations could create a genuine dispute of material fact as to whether the plaintiff was unable to perform a class of jobs.  527 U.S. 516, 524 (1999).  Failure to meet DOT regulations only establishes that one is unable to perform the job of driving a commercial vehicle which is "a specific type of vehicle used on a highway in interstate commerce."  *Id.*  While the *Murphy* Court's analysis in the context of a regarded as theory is no longer appropriate following the ADAAA's revisions to the elements for regarded as claims, it remains precedential in examining the major life activity of working in the context of compliance with DOT regulations for claims under section 12102(1)(A) and (B).

Because the uncontroverted material facts establish that Diebold's stroke did not affect a major life activity, the EEOC cannot make a prima facie case under the ADA.

**B.     UPSF did not regard Diebold as disabled because Diebold's stroke was transitory and minor, he was legally unqualified for the road driver position without medical certification, and following his stroke UPSF allowed Diebold to return to the road driver position.**

The EEOC is also unable to establish a prima facie case that UPSF regarded Diebold as disabled.  Regarded as claims under the ADAAA require the plaintiff to "show that (1) he has an actual or perceived impairment, (2) the impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action."  *Adair*, 823 F.3d at 1306.  But the plaintiff must still be qualified for the position.  *Id.*  There is no obligation to accommodate an individual under a regarded as theory.

11

42 U.S.C. § 12201(h).[2]

To the extent the EEOC pursues a regarded as theory, it fails because Diebold's stroke was transitory and minor. "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). Here, Diebold's stroke prevented him from working for approximately three weeks. SUMF ¶¶ 2-8. Once he completed his physical therapy, he returned to work and experienced no other issues related to his stroke. SUMF ¶¶ 9-16, 22. As a result, the EEOC's regarded as claim fails as a matter of law.

Even assuming Diebold's stroke constituted an impairment that was not transitory or minor and that UPSF perceived it as such, the EEOC still cannot establish that Diebold was qualified for his road driver position. One cannot take issue with an employer's decision to follow DOT requirements and require an individual to remain TIA stroke free for one year before permitting the individual to operate a commercial vehicle. *Boykin v. ATC/VanCom of Colorado, L.P.*, 247 F.3d 1061, 1063 n.2 (10th Cir. 2001).[3] "[A]s a matter of law, if an essential function of a position is the ability to operate a commercial vehicle, then being DOT-certified is an automatic, binding, and utterly unavoidable requirement." *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 895 (10th Cir. 2015). The EEOC cannot contend that Diebold was qualified to be a road driver without medical certification. SUMF ¶¶ 17-21. As a result, any regarded as

---

[2] As observed by one district court, the ADAAA creates overly broad coverage for regarded as claims and they are easier to prove than other disability theories that require a limitation of a major life activity, but regarded as claims also have limited remedies due to the elimination of any obligation to accommodate. *Marsh v. Terra Int'l (Oklahoma), Inc.*, 122 F. Supp. 3d 1267, 1283 nn.10-11 (N.D. Okla. 2015).

[3] In *Boykin*, the Tenth Circuit affirmed summary judgment on the plaintiff's accommodation theory and therefore assumed for purposes of that analysis that the plaintiff was statutorily disabled as a result of a TIA stroke. 247 F.3d at 1064 n.3. The Tenth Circuit cautioned, however, in a manner consistent with *Murphy* and UPS' argument in subsection A above that the plaintiff's alleged disability was questionable because the TIA stroke only prevented the plaintiff from a particular driving job as opposed to a class of jobs. *Id.*

claim fails.

Any regarded as claim also fails because the EEOC cannot establish that UPSF discriminated against Diebold on the basis of his stroke. "Establishing that an individual is 'regarded as having such an impairment' does not, by itself, establish liability." 29 C.F.R. § 1630.2(l)(3). "Liability is established under title I of the ADA only when an individual proves that a covered entity discriminated on the basis of disability within the meaning of section 102 of the ADA, 42 U.S.C. 12112." Accordingly, summary judgment is proper on regarded as claims where the employer allowed the plaintiff to return to work without restriction despite the impairment. *See Smith v. Morton Int'l, Inc.*, 449 F. App'x 739, 743 (10th Cir. 2011) (affirming summary judgment on regarded as theory because affording the plaintiff leave for treatment and allowing return upon completion does not support an inference that subsequent termination related to a perceived disability).

The EEOC cannot show that UPSF discriminated against Diebold on the basis of any perceived disability. Rather, the undisputed evidence shows UPSF considered Diebold to be fully capable of performing his job. UPSF allowed Diebold to return to the road driver position in February 2013 despite knowledge of his stroke. SUMF ¶¶ 4-16. UPSF permitted Diebold to complete his physical therapy. SUMF ¶¶ 4-8. No one said anything to Diebold that led him to believe UPSF was upset with the fact that he had a stroke or that they had concerns about his ability to perform the road driver position. SUMF ¶¶ 10-16. UPSF imposed no restrictions on Diebold and there were no complaints about his performance. SUMF ¶¶ 10-16. The only change occurred when Diebold became medically decertified after his physician learned about the stroke. SUMF ¶¶ 17-21. As soon as Diebold obtained medial certification, UPSF returned him back to his same road driver position which Diebold performed until Diebold voluntarily

retired. SUMF ¶¶ 24-26. Diebold's treatment by UPSF following his stroke eliminates any reasonable inference that UPSF regarded him as disabled.

Because Diebold's stroke was transitory and minor, he became unqualified for the road driver position under DOT requirements, and UPSF returned him to his same position without restriction after his stroke, the EEOC's regarded as theory fails as a matter of law.

## V. CONCLUSION

Summary judgment in favor of UPSF is proper because the uncontroverted material facts establish that the EEOC is unable to demonstrate genuine disputes of material fact to support a prima facie case of disability discrimination on behalf of Diebold.

Respectfully submitted,

ARMSTRONG TEASDALE LLP

By: /s/ Daniel K. O'Toole
Daniel K. O'Toole #38051
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
314.621.5070
314.621.5065 (Facsimile)
dotoole@armstrongteasdale.com

Shelley I. Ericsson #19098
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (facsimile)
sericsson@armstrongteasdale.com

*Attorneys for Defendant UPS Ground Freight, Inc., d/b/a UPS Freight*

## **CERTIFICATE OF SERVICE**

  This is to certify that on Tuesday, June 04, 2019, a true and accurate copy of the above and foregoing was e-filed with the Court using the CM/ECF system which sent notification to all parties entitled to service.

            <u> /s/ *Daniel K. O'Toole*      </u>