IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

        v.

                                       Case No. 17-2453-JAR

UPS GROUND FREIGHT, INC. d/b/a UPS
FREIGHT, et al.,

        Defendants.

## MEMORANDUM AND ORDER

On March 2, 2020, this Court denied the parties' cross-motions for summary judgment on

the only remaining claim in this matter—Count I for disability discrimination under the

Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008

("ADAAA").[1]  The Court denied Plaintiff Equal Employment Opportunity Commission's

("EEOC") summary judgment motion under the heightened standard that applies when a

summary judgment movant also bears the burden of proof at trial.  Before the Court is the

EEOC's Motion to Reconsider Denial of Summary Judgment (Doc. 175).  The motion is fully

briefed and the Court is prepared to rule.  For the reasons stated below, the Court denies the

EEOC's motion to reconsider.

I.      Standard

D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders.  Under that

rule, a party may seek reconsideration on the following grounds: (1) an intervening change in the

controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or

---

[1] Pub. L. No. 110-325, 122 Stat. 3553 (codified as amended at 42 U.S.C. §§ 12101–12213).

prevent manifest injustice.[2]  While a motion to reconsider is available where the court has "misapprehended the facts, a party's position, or the controlling law," such a motion does not permit a party to "revisit issues already addressed or to advance arguments that could have been raised in prior briefing."[3]  "The Tenth Circuit has observed that 'a motion for reconsideration is an extreme remedy to be granted in rare circumstances.'"[4]  "A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider."[5]  Whether to grant a motion for reconsideration is left to the court's discretion.[6]

## II.    Discussion

The EEOC does not move the Court to reconsider its denial of Defendant UPS Freight's ("UPSF") motion for summary judgment.  Its motion challenges the Court's denial of its affirmative motion for summary judgment.  As the Court explained in detail in its March 2 Order, the EEOC was required to prove the following elements on its disability discrimination claim: (1) Thomas Diebold was disabled as defined under the ADAAA; (2) Diebold was qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) Diebold was discriminated against because of his disability.[7]  Because the EEOC bears the burden of proof at trial on its claim, it must do more than merely

---

[2] D. Kan. R. 7.3(b).

[3] *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (addressing motion under Fed. R. Civ. P. 59(b)).

[4] *A.H. ex rel. Hohe v. Knowledge Learning Corp.*, Case No. 09-2517-DJW, 2011 WL 1466490, at *4 (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995)).

[5] *Id.* (citing *Sithon Mar. Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998); *see also Turner v. Nat'l Council of State Bds. of Nursing*, Case No. 11-2059-KHV, 2013 WL 139750, at *2 (D. Kan. Jan. 10, 2013) (citing *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 370 F. Supp. 2d 1130, 1132 (D. Kan. 2005), *aff'd*, 191 F. App'x 822 (10th Cir. 2006)).

[6] *Coffeyville*, 748 F. Supp. 2d at 1264 (citing *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

[7] Doc. 173 at 11 (citing *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016); *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011)).

point to a genuine issue of material fact on these elements to be entitled to summary judgment; it must show that "no reasonable trier of fact could find other than for the moving party."[8]

The EEOC argues that the Court misapplied the law or facts in denying its motion for summary judgment in three ways: (1) by declining to rule that Diebold had a record of disability as a matter of law because his January 2013 stroke substantially limited the operation of his cardiovascular and neurological systems; (2) by declining to rule that Diebold was disabled under the "regarded-as" definition of disability because there are disputed material facts about UPSF's awareness of Diebold's impairment on the relevant dates; and (3) by misstating the uncontroverted facts relevant to the causation analysis.

## A.   Record of Disability

Under the ADAAA, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment (as described in Paragraph (3))."[9]  The EEOC asserted it was entitled to judgment as a matter of law under (B) and (C).  Under the applicable regulation, "[a]n individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."[10]  A record of disability "may be satisfied by a showing that the plaintiff had a disability in the past (even though he no longer suffered from that disability when the allegedly discriminatory action took place)."[11]

---

[8] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[9] 42 U.S.C. § 12102(1).

[10] 29 C.F.R. § 1630.2(k)(1); *see also Zwygart v. Bd. of Cty. Commr's of Jefferson Cty., Kan.*, 483 F.3d 1086, 1091 (10th Cir. 2007).

[11] *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 40 (1st Cir. 2018).

The Court found in its March 2 Order that "[n]o reasonable jury could conclude that Diebold was not impaired in January 2013, and that his impairment included a heightened risk of future strokes."[12]  Therefore, it proceeded to determine whether Diebold's stroke substantially limited a major life activity.  "Major life activities" include:

> (i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and
>
> (ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.[13]

The Court denied both parties' motions for summary judgment on this issue, finding disputed material facts about whether Diebold was substantially limited in the major life activities set forth in the statute.  The EEOC now argues that the Court erred by not separately analyzing whether Diebold was substantially limited under subsection (ii).

In the EEOC's opposition brief to USPF's summary judgment motion, it characterized as undisputed that "the operation of at least two major bodily functions—[Diebold's] neurological and cardiovascular systems"—were substantially limited.[14]  But the Court did not find this fact undisputed.  The Court found undisputed that Plaintiff's January 2013 stroke "*affected* his neurological and cardiovascular systems" and the Court took this fact into account in finding that

---

[12] Doc. 173 at 15.

[13] 29 C.F.R. § 1630.2(i)(1).

[14] Doc. 164 at 25–26.

his stroke was an impairment.[15]  But affecting those systems and substantially limiting them are not the same, otherwise the impairment analysis would collapse into a disability finding.[16]

The EEOC cited evidence from "Diebold, his physician, and his occupational therapist . . . of the substantial impact on his bodily systems."[17]  The Court considered that evidence, but found it was limited because it did not sufficiently address the condition, manner, and duration of Diebold's limitations after the January 2013 stroke, factors that the regulations counsel the trier of fact to consider.[18]  The EEOC fails to explain how this finding is not equally applicable to the major life activities set forth in subsection (ii) of the regulation.  Those factors apply "[a]t all times taking into account the principles in paragraphs (j)(1)(i) through (ix) of this section, in determining whether an individual is substantially limited in a major life activity."[19]  As the Court explained, the EEOC's medical evidence fell short of the threshold necessary to show that no reasonable trier of fact could conclude otherwise than that Diebold was substantially limited in his major life activities and the Court declines to revisit that ruling.  UPSF's continued argument that the duration factor in particular creates a genuine issue of material fact on this issue is well-taken; it does not amount to a concession that Diebold had a record of impairment as a matter of law.

29 C.F.R. § 1630.2(j)(3)(ii)–(iii) sets forth a list of impairments that "will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity."[20]  Neither stroke nor TIA is on this list.  And, as the Court noted in its Order, there is no per se

---

[15] Doc. 173 at 3, 17–18.

[16] *See* 29 C.F.R. § 1630.2(j)(1)(ii) ("not every impairment will constitute a disability within the meaning of this section.").

[17] Doc. 164 at 27.

[18] *See* 29 C.F.R. § 1630.2(j)(4)(ii).

[19] *Id.* § 1630.2(j)(4)(i).

[20] 29 C.F.R. § 1630.2(j)(3)(ii).

disability under the regulations.[21]  Whether an impairment substantially limits a major life activity is usually a question of fact for the jury and there must be some individualized evidence about the impairment's effect on the person's major bodily functions.[22]  The Court evaluated this evidence and found that it fell short of establishing as a matter of law that the stroke substantially affected Diebold's "major life activities," which under the regulation includes his major bodily functions.  The medical evidence is limited to the immediate impact of the stroke on various life activities.  Diebold's medical evidence states that the stroke "significantly impacted his Right Upper Extremities," but there is no evidence that concludes his neurological and cardiovascular systems were substantially limited as a result.  It is undisputed that Diebold only required three weeks of occupational therapy for this right-side weakness before his physician fully released him back to work.  While a reasonable jury could conclude that the stroke substantially limited Diebold's major bodily functions when considering the evidence, it could also find that it did not.  As such, summary judgment was not appropriate on the basis that Diebold had a record-of-disability.

### B.    Regarded-As Claim

A "regarded-as" disability under § 12102(1)(C) "need not limit or even be perceived as limiting a major life activity—the employer need only regard the employee as being impaired."[23] To show that UPSF regarded Diebold as having an impairment, the EEOC needed to show that (1) he has an actual or perceived impairment, (2) the impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the

---

[21] Doc. 173 at 14 (citing *Scavetta v. Dillon Cos.*, 569 F. App'x 622, 624 (10th Cir. 2014)).

[22] *Scavetta*, 569 F. App'x at 625.

[23] *Sharp v. Owens Corning Insulating Sys., LLC*, No. 17-CV-2463-JWL, 2018 WL 3831527, at *7 (D. Kan. Aug. 13, 2018) (quoting *Adair v. City of Muskogee*, 823 F.3d 1297, 1305–06 (10th Cir. 2016)).

alleged discriminatory action.[24]  The Court denied the EEOC's motion on the issue of whether UPSF was aware of Diebold's impairment at the time of the alleged discriminatory actions: May 13, 2013 and December 6, 2013.  In its motion to reconsider, the EEOC argues that the Court erred in finding that it did not meet its burden on the awareness prong.  First, the EEOC contends it is undisputed that UPSF was aware of Diebold's January stroke, and this awareness of his past impairment was sufficient under the relaxed standard that applies to regarded-as claims.  Second, the EEOC argues that the Court erred by considering whether UPSF perceived Diebold's stroke as non-limiting in May and December 2013.

The EEOC's points of error turn on the timing of the employer's awareness of an impairment for regarded-as claims.  In its March 2 Order, the Court cited the Tenth Circuit's formulation of the awareness element as requiring the employer to be "aware of and therefore perceive[] the impairment *at the time of the alleged discriminatory action*."[25]  For this general formulation of the awareness element, the Court further cited the Eleventh Circuit's decision in *EEOC v. STME, LLC*, a recent decision granting the employer's motion to dismiss for failure to state a claim because the EEOC did not allege facts sufficient to demonstrate the employer perceived the employee "had an existing impairment at the time it terminated her employment."[26]

The EEOC argues that *STME* is inapposite because it dealt only with the employer's perception of a potential for future impairment; it was undisputed in that case that the employee did not have a present or past impairment.[27]  In contrast here, it is undisputed that Diebold had a

---

[24] Doc. 173 at 19 (citing *Adair*, 823 F.3d at 1306).

[25] *Adair*, 823 F.3d at 1306 (emphasis added).

[26] Doc. 173 at 21 (citing *STME*, 938 F.3d 1305, 1318 (11th Cir. 2019)).

[27] *STME*, 938 F.3d at 1315 ("the ADA does not cover this case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future.").

past impairment and that UPSF was aware of that past impairment at the time of the discriminatory actions.  Therefore, the EEOC interprets the statute as allowing a plaintiff to establish a regarded-as disability where the employer is aware of *either* a current *or* a past impairment.

The ADAAA's regarded-as disability definition applies to an individual "regarded as having such an impairment."[28]  The Eleventh Circuit explained in *STME* that "[i]n 'regarded as' cases, a plaintiff must show that the employer knew that the employee had an actual impairment or perceived the employee to have such an impairment at the time of the adverse employment action."[29]  The court stated that the regarded-as definition "necessarily refers back to § 12102(1)(A)," the definition of actual disability.[30]  The court did not discuss or reference subsection (B), the record-of-disability definition.

Recent circuit cases have held that a regarded-as disability requires the employer to perceive the employee as "having a current existing impairment at the time of the alleged discrimination."[31]  While it is true that these cases applied their holdings to employer perceptions about potential future impairments,[32] that reasoning also applies to perceptions of past impairments that are not ongoing.  The Seventh Circuit explained that "having" in the statute

---

[28] 42 U.S.C. § 10102(1)(C).

[29] *STME*, 938 F.3d  at 1316.

[30] *Id.*

[31] *Id*. at 1318; *Shell v. BNSF Ry. Co.*, 941 F.3d 331, 336 (7th Cir. 2019); *see also EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 923 (9th Cir. 2018) ("This reading comports both with the statutory text, which prohibits discrimination on the basis of an 'actual or perceived impairment' in the present tense, 42 U.S.C. § 12102(3)(A), and with out-of-circuit case law" (citation omitted)); *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1113 (8th Cir. 2016) ("the ADA prohibits actions based on an existing impairment or the perception of an existing impairment.").

[32] *See STME*, 938 F.3d at 1318 (finding no coverage where employer perceived healthy employee with only a potential to become ill in the future due to voluntary overseas travel); *Shell*, 941 F.3d at 336 (finding no coverage where employer failed to hire applicant because of fear that obesity created risk of future impairments); *EEOC v. BNSF Ry. Co.*, 902 F.3d at 923 (rejecting employer's argument that it was uncertain about the state of its employee's back where the evidence showed it assumed the employee was impaired when it revoked a job offer ); *Morriss*, 817 F.3d at 1113 (declining to apply regarded as definition to employer's perception of applicant as developing future health risks due to obesity).

"means presently and continuously. It does not include something in the past that has ended or something yet to come."[33] The Court does not agree with the EEOC that this language is dicta. It is part of the court's statutory interpretation, which evaluated both the plain meaning of the statutory text and its context.[34] The Seventh Circuit's analysis is directly on point in this case. Here, the crux of the parties' dispute is whether UPSF perceived Diebold as having a past impairment that ended when he returned to work in February 2013, or rather whether UPSF perceived Diebold's stroke as an ongoing current impairment in May and/or December 2013. While the Court does not consider whether Diebold's impairment was substantially limiting or whether UPSF viewed it as substantially limiting on the regarded-as claim, it must find that UPSF perceived a current impairment—perception of a past impairment that has ended will not do. The fact that Diebold was released to work and worked for two months with no perceived limitations is relevant to the timing of UPSF's awareness.

The EEOC is correct that there is no genuine issue of material fact about whether UPSF was aware of Diebold's January 2013 stroke at the time of the challenged decisions. But the Court found there was a genuine issue of material fact as to whether UPSF perceived that Diebold had a *current impairment* at the time of its challenged actions in May and December 2013. While the EEOC is correct that evidence of Diebold's limitations are not relevant to the impairment element on a regarded-as claim, these disputed facts are relevant to the awareness element because UPSF argues that it did not perceive Diebold to have a current impairment

---

[33] *Shell*, 941 F.3d at 336. The EEOC's out-of-context quotation to *STME* is not persuasive on this point. The EEOC cites and quotes to *STME* for its argument that "other cases involved situations where defendant did not know the plaintiff had a 'current, past, or perceived disability.'" Doc. 176 at 5 (quoting *STME*, 938 F.3d at 1316). The full quotation stands for the unremarkable general proposition that "the terms of the ADA protect anyone who experiences discrimination because of a current, past, or perceived disability—not potential future disability." *STME*, 938 F.3d at 1316. It does not support the proposition that the employer's awareness on a regarded-as claim can be based on a past impairment that is not ongoing.

[34] *Shell*, 941 F.3d at 336–37.

given his prior recovery, which allowed him to return to work for more than two months after his stroke.  This determination about UPSF's subjective awareness of the impairment is distinct from the objective determination that there is sufficient evidence that the stroke was an impairment that was not transitory or minor.  Therefore, a genuine issue of material fact remains as to whether UPSF regarded Diebold as disabled under the statute.

### C.    Causation

The EEOC urges reconsideration because the Court erroneously attributed UPSF's decision not to allow Plaintiff to return to full-time dock work under the collective bargaining agreement ("CBA") as based on his loss of a medical examiner's certificate ("MEC"), rather than on a policy of classifying disabled employees in a way that adversely affected his status and pay.[35]  While the Court agrees that its causation analysis lends itself to further clarification, its ultimate conclusion that there is a genuine issue of material fact on causation does not require reconsideration.

The CBA provision at issue in this case applied when "an employee in any job classification requiring driving has his/her operating privilege or license suspended or revoked for reasons other than those for which the employee can be discharged."[36]  Such employees were to be given "available work opportunities to perform non-CDL required job functions."[37] Initially, both Diebold and his immediate supervisor believed that this provision applied to him and would allow him to work as a full-time dock worker during the period of time during which his MEC was suspended because his MEC was not renewed based on guidance from the DOT.

---

[35] As the Court made clear in its recitation of uncontroverted facts, Plaintiff was disallowed from continuing in his road driver position due to the loss of his MEC, which was based on the Department of Transportation's ("DOT") policy of requiring a one-year waiting period before a person who suffers a stroke can return to driving.

[36] Doc. 166-2 at 41–42, Art. 21 § 2(a).

[37] Id.

But UPSF interpreted Article 21 § 2 as applying to those whose commercial driver's license ("CDL") was suspended or revoked due to, for example, a DUI, but not to those who are medically disqualified.  Therefore, in May 2013, UPSF determined Diebold was not covered by this CBA provision, and therefore was not eligible for full-time dock work.  This meant his pay and benefits were lower than those whose CDL was suspended due to a DUI arrest.  In December 2013, UPSF offered Diebold dock work, but at a lower pay than workers whose driving privileges were suspended for legal reasons, such as a DUI arrest.

The issue on summary judgment was whether Diebold's differential treatment was due to his record of or perceived disability.  UPSF admitted that the decision not to apply the CBA to Diebold was based on the nonrenewal of his MEC for medical reasons, but it maintains that this does not mean that the decision was because of his disability.  The Court agreed, and found that there was a genuine issue of material fact about whether UPSF's interpretation of the CBA was "because of" Diebold's disability.  Moreover, as the Court discussed in detail, there are genuine issues of material fact about whether Diebold had a record of or was perceived as having a disability.  If the trier of fact determines he was not disabled as defined by the statute, it can also determine that his differential treatment was not because of a disability.  There is a genuine issue of material fact about whether Diebold's treatment under the CBA was based on disability and the Court declines the EEOC's invitation to find that UPSF's interpretation of the CBA standing alone evidences causation as a matter of law.

In sum, there are genuine issues of material fact on the issues of disability and causation in this case.  A reasonable trier of fact could certainly find for the EEOC on these issues, but the Court cannot conclude that no reasonable trier of fact could find other than for the EEOC on its

discrimination claim.  Therefore, the Court denies the motion to reconsider its summary

judgment ruling

      **IT IS THEREFORE ORDERED BY THE COURT** that the EEOC's Motion to

Reconsider Denial of Summary Judgment (Doc. 175) is **denied**.

      **IT IS SO ORDERED.**

      Dated: April 27, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
